COMMONWEALTH vs. JOHN A. DIAS
(and three companion cases[1]).

Bristol. February 6, 1989. — June 13, 1989.

Present: WILKINS, LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Constitutional Law*, Confrontation of witnesses, Admissions and confessions, Speedy trial, Waiver of constitutional rights. *Waiver. Practice, Criminal*, Severance, Instructions to jury, Speedy trial. *Homicide*.

At a murder trial, a videotaped statement made by one of the two codefendants was admitted in evidence in violation of the other defendant's rights under the confrontation clause of the Sixth Amendment to the Constitution of the United States; the denial of that defendant's pretrial motion for a severance of his trial was not harmless beyond a reasonable doubt, with the result that a new trial was required. [134-137]

At a murder trial, a videotaped statement made by one of the two codefendants was admitted in evidence in violation of the other defendant's rights under the confrontation clause of the Sixth Amendment to the Constitution of the United States; where that defendant neither moved to sever his trial nor objected to the failure of the judge to give an instruction limiting the jury's consideration of the statement to the question of the declarant's guilt only, there was a substantial risk of a miscarriage of justice and a new trial was required. [137-138]

At a murder trial, the judge correctly denied a defendant's motion to dismiss pursuant to Mass. R. Crim. P. 36, for failure to grant him a speedy trial, where the defendant had acquiesced in the delay beyond the one year period of the rule and where there was no violation of the defendant's constitutional right to a speedy trial. [138-139]

In a criminal case, the record of a hearing on a defendant's motion to suppress his confession supported the judge's conclusion that the defendant's statements were made freely, voluntarily and without coercion after a lawful arrest. [139-140]

INDICTMENTS found and returned in the Superior Court Department on December 18, 1984.

---

[1] One companion case is against John Dias; the other two are against Edward J. Dias.

Pretrial motions for severance and to dismiss were heard by *William H. Carey*, J., and a motion to suppress evidence was heard by *Robert S. Prince*, J. The cases were tried before *Augustus F. Wagner, Jr.*, J.

*Charles W. Rankin* for John A. Dias.

*Mary F. Costello* for Edward J. Dias.

*Cynthia A. Vincent*, Assistant District Attorney, for the Commonwealth.

LYNCH, J. The defendants, John A. Dias (John) and Edward J. Dias (Edward), appeal from their convictions, after a joint jury trial, of the murder in the first degree of Frank Rose (by reason of premeditation, extreme atrocity or cruelty, and felony murder), and burglary and armed assault. John also was convicted of larceny of a motor vehicle; that indictment was filed with John's consent. John claims that the trial judge erred in denying a motion to sever the trials; in denying a motion to dismiss due to the Commonwealth's delay in coming to trial; and in the instructions to the jury. He also contends that we should reduce his conviction to murder in the second degree under our general supervisory power found in G. L. c. 278, § 33E (1986 ed.). Edward appeals on grounds of ineffective assistance of counsel because (1) there was no motion to sever, and (2) he was not advised that, in conceding guilt of murder in the second degree, he could still be convicted of felony murder. He also claims that there was error in the charge to the jury and that his statements to police should have been suppressed. We conclude that John and Edward should have been granted separate trials, that dismissal of the indictments against John for failure to grant a speedy trial was not warranted since he acquiesced in some of the periods of delay, and that Edward's statements to the police were properly admitted against him. Since we order new trials for both defendants on grounds that severance was required, we need not reach the remaining issues — for example, those regarding alleged errors in instructions to the jury — which are unlikely to arise at the new trials.[2]

---

[2] Our review of the cases, pursuant to G. L. c. 278, § 33E, involves only the murder convictions. Since the indictments for burglary and armed as-

We recite some of the facts that the jury could have found, reserving others for discussion in conjunction with specific issues raised. On the morning of November 30, 1984, John and Edward Dias travelled by taxi cab from John's home in Fall River to Somerset. They purchased cigarettes at a convenience store on County Street and then walked toward Dighton, stopping at another store to purchase sandwiches. When they left that store, John and Edward discussed robbing a house nearby, but decided it was too close to the road. They continued walking, stopping at a reservoir one block from the victim's house, where they ate their sandwiches. The defendants continued to discuss robbing a house. The defendants went back to the store where they had bought sandwiches, purchased candy and soda, and then returned to the reservoir area near the victim's house. According to Edward, John wanted to rob Rose's house because John knew there would be money there. According to John, Edward suggested robbing Rose's house, but John protested that Rose knew John because John had worked on Rose's farm. Sometime in the late afternoon the defendants saw Rose drive up to the house, go inside for a short time, then drive away again. The two defendants remained on the hill near Rose's house until evening, when Rose again returned home. Although the defendants' statements differ widely in particulars, they correspond in that, at some point, one of them produced a buck knife; that, at some time well after dark, the defendants went into the victim's house, and that the victim came toward the defendants saying, "I know you." Either Edward or both Edward and John stabbed Rose, after which the two ran out of the house and into some fields nearby where they threw away the knife. After one hour or more had passed the defendants returned to the house, ascer-

sault, however, were closely tied to the murder and require proof of some of the same elements, e.g., intent, and since the jury improperly were allowed to consider the statements of the other defendant in deciding each defendant's case, we conclude that the error related to both crimes and that there must be a new trial as to each. See *Commonwealth* v. *Palmer*, 386 Mass. 35, 38 (1982). The conviction of larceny of a motor vehicle has not been appealed and is not before us.

tained that Rose was dead, and then stole a television set, some money, and Rose's pickup truck.

A neighbor discovered Rose's body on December 2, 1984; Rose's house had been ransacked. The neighbor telephoned the police, and reported also that Rose's pickup truck was missing. On a tip from an informant, the police located the pickup truck near John's apartment building in Fall River. The police also learned that the cap from the truck had been left at a junk yard by John Dias, his wife, and a young man with blond hair. Police obtained an arrest warrant for John Dias for larceny of a motor vehicle and receiving stolen property. When they arrived at John's apartment building on Rodman Street in Fall River on December 3, they noticed a young man in the hallway who matched the description of John's companion given by both the junk yard operator and neighbors of Frank Rose. The young man identified himself as Edward, John's cousin. The police learned that Edward Dias was wanted on an outstanding warrant, and so arrested him along with John. The defendants were placed in separate rooms at the Fall River police station. Both defendants were fully informed of their constitutional rights pursuant to *Miranda* v. *Arizona*, 384 U.S. 436 (1966), and each signed a waiver before answering questions from police. At some point, each defendant began to admit to involvement in the robbery and presence at the killing of Frank Rose. Both defendants gave videotaped confessions to police. Each statement, while inculpating the declarant, tended to be more inculpatory of the other man. Neither defendant testified at trial, but both videotaped statements were admitted in evidence. An autopsy of Rose's body indicated that Rose had been stabbed four times in the chest and that two of the wounds were fatal.

1. *Severance.* The prosecutor's cases against John and Edward Dias rested in large part on the videotaped statements given to police. Each defendant relied in large part on his respective videotaped statement, in which each admitted to reluctant involvement in the robbery and presence at the murder of Frank Rose, but contended that the other codefendant had suggested the robbery of Rose's house and was responsible

for Rose's murder. After a hearing, the judge denied John's motion to sever, citing *Commonwealth* v. *Horton*, 376 Mass. 380 (1978), cert. denied sub nom. *Wideman* v. *Massachusetts*, 440 U.S. 923 (1979), and *Parker* v. *Randolph*, 442 U.S. 62 (1979).[3] The hearsay statements of both defendants were admitted and, despite the judge's decision to have them tried jointly, no instruction was given by the judge limiting the jury's consideration of each statement to the question of the declarant's guilt only. John now argues that the denial of his motion to sever his trial from that of Edward violates his constitutional right to confrontation, since Edward's confession implicating John was admitted in evidence at their joint trial, yet Edward did not take the stand.

The confrontation clause of the Sixth Amendment to the United States Constitution guarantees the right of a criminal defendant "to be confronted with the witnesses against him." At a joint trial of two or more defendants, therefore, the admission in evidence of the extra-judicial statement of a nontestifying codefendant which inculpates another defendant is violative of the latter's right to confrontation under the Sixth Amendment to the United States Constitution. *Commonwealth* v. *Horton*, *supra* at 388. See *Bruton* v. *United States*, 391 U.S. 123 (1968). "Ordinarily, a witness is considered to be a witness 'against' a defendant for purposes of the Confrontation Clause only if his testimony is part of the body of evidence that the

---

[3] We note that the reasoning of *Commonwealth* v. *Horton*, *supra* at 388-390, is not applicable to this case, since there the police had separate evidence implicating the defendants in the robbery and murder, and in their statements the defendants admitted to enough involvement in the armed robbery for the jury to have found the requisite intent without reference to the statements made by the codefendants. In addition, the reasoning of *Parker* v. *Randolph*, *supra*, was rejected by the Supreme Court in *Cruz* v. *New York*, 481 U.S. 186 (1987), discussed *infra*. Compare *Commonwealth* v. *Bianco*, 388 Mass. 358, 366 (1983) ("[t]he defendants' contentions [regarding inadequacy of editing codefendants' statements] are answered by the reasoning of *Parker* v. *Randolph* . . . anticipated by this court in *Commonwealth* v. *Horton* . . . wherein we held that a defendant's Sixth Amendment rights are not violated . . . if the defendant himself has made admissible statements which are as damaging as those made by the nontestifying codefendant").

jury may consider in assessing his guilt. Therefore, a witness whose testimony is introduced in a joint trial with the limiting instruction that it be used only to assess the guilt of one of the defendants will not be considered to be a witness 'against' the other defendants." *Cruz* v. *New York*, 481 U.S. 186, 190 (1987). In *Bruton*, however, the Supreme Court held that this principle will not be applied to validate, under the confrontation clause, introduction of a nontestifying codefendant's confession implicating the defendant, even with instructions that the jury should disregard the confession in so far as its consideration of the defendant's guilt is concerned. A plurality of the Supreme Court later held that the *Bruton* rule is inapplicable where "the incriminated defendant has corroborated his codefendant's statements by heaping blame onto himself," *Parker* v. *Randolph*, 442 U.S. 62, 73 (1979), so that the admission of "interlocking confessions with proper limiting instructions" was not violative of the defendant's constitutional rights. *Id.* at 75.

The Supreme Court subsequently rejected the plurality view of *Parker* v. *Randolph*, and held that a limiting instruction could not validate the admission of "interlocking" confessions at a joint trial. *Cruz* v. *New York*, *supra* at 193. Such an admission, therefore, creates a violation of the *Bruton* rule. Where a *Bruton* violation occurs, we apply a stringent test to determine whether the denial of severance can be viewed as harmless beyond a reasonable doubt. *Commonwealth* v. *Sinnott*, 399 Mass. 863, 872 (1987). Where no limiting instruction was given and the jury could therefore consider both statements as substantive evidence against both defendants, a clear violation of the confrontation clause exists unencumbered by the distinctions raised in the decisions interpreting and applying *Bruton*.[4]

---

[4] Although both *Cruz* v. *New York*, *supra*, and *Bruton* v. *United States*, *supra*, conclude that the giving of limiting instructions may not save the admission of a codefendant's statement from being constitutional error because a jury can be expected to ignore the instruction in certain circumstances, it is clear that, once severance has been denied, the trial judge *must* give a limiting instruction, whether or not it has been requested.

In this case, where there was no opportunity for cross-examination, the videotaped statements of Edward Dias provided the most inculpatory evidence against John on each of the major issues in dispute and on most of the elements for which the Commonwealth had the burden of proof. In view of Edward's statements — that John was the mastermind of the burglary; that he insisted on waiting until Rose returned home; that he provided the knife, pushed open the door, and directed Edward to use the knife "if anything happens"; that he punched and kicked Rose; that he took the knife after Edward had stabbed Rose, and remained in the house for two minutes after Edward had fled — John did not have a fair opportunity to establish reasonable doubt as to whether he intended to rob and murder Rose. Nor was there other evidence establishing as a preliminary matter the existence of a joint venture in a crime that would warrant a conviction of murder in the first degree. See *Commonwealth* v. *Bongarzone*, 390 Mass. 326, 340 (1983), and cases cited. The defendants' statements were not merely inconsistent. See *Commonwealth* v. *Moran*, 387 Mass. 644, 658-659 (1982), and cases cited. Nor were the statements merely cumulative or corroborative of other evidence. See *Commonwealth* v. *Bongarzone*, *supra* at 342; *Commonwealth* v. *Graves*, 363 Mass. 863, 872 (1973). In the circumstances, we cannot say that Edward's statements were "without effect on the jury and did not contribute to the verdict." *Commonwealth* v. *Sinnott*, *supra* at 872, quoting *Commonwealth* v. *Marini*, 375 Mass. 510, 520 (1978). We therefore conclude that it was error to deny John's motion to sever, and that John is entitled to a new trial.

For substantially the same reasons, we conclude that Edward also is entitled to a new trial. Because Edward did not move to sever his trial and did not object to the instructions which failed to limit the jury's consideration of John's statement to the case against John, we review Edward's case under our authority pursuant to G. L. c. 278, § 33E, to determine whether the error created a substantial likelihood of a miscarriage of justice.[5] See *Commonwealth* v. *Richmond*, 379 Mass. 557,

---

[5] Because we decide the case under G. L. c. 278, § 33E, we do not reach Edward's claim of ineffective assistance of counsel.

562 (1980). Even where a defendant's own confession is admitted and provides strong inculpatory evidence against him, the admission of a nontestifying codefendant's confession incriminating the defendant creates a *Bruton* confrontation clause violation. *Cruz* v. *New York*, *supra* at 193-194. In the absence of limiting instructions, we cannot say that the jury did not consider John's statements — that Edward was the mastermind; that he brought the knife; that he entered the house first, and stabbed Rose three or four times, while John protested against robbing Rose; that John thought Edward had thrown away the knife; and that John had never touched, punched, or stabbed Rose — in deciding Edward was guilty of murder in the first degree. Since the jury were able to consider John's statements as evidence against Edward, a substantial risk of a miscarriage of justice in both the murder conviction and the conviction on the underlying felony occurred.

2. *The denial of John's motion to dismiss.* John contends that the trial judge erred in denying his motion to dismiss pursuant to Mass. R. Crim. P. 36, 378 Mass. 909 (1979), which provides that a defendant is entitled to be tried within twelve months after the "return day" or the day the defendant was first before the court to answer the charges against him. Mass. R. Crim. P. 36 (b) (1) (C). See *Commonwealth* v. *Farris*, 390 Mass. 300, 304 (1983). John was arraigned on December 21, 1984; he moved to dismiss for failure to grant him a speedy trial on February 21, 1986. In denying the motion, the trial judge noted, and the record reflects, that John had agreed to a continuance for fifty-four days from July 26, 1985, to September 18, 1985 (and could have relied on Mass. R. Crim. P. 14, 378 Mass. 874 [1979], to obtain allowable discovery from the Commonwealth before then). John also expressly acquiesced in an eleven-day period of delay from April 25, 1985, to May 6, 1985. In addition, a delay, "by agreement," was acquiesced in by John at his bail review hearing on January 24, 1985, until February 20, 1985. The Commonwealth had to justify delay of only sixty-two days beyond the twelve-month period required; the judge concluded that the three delays constituted "excludable periods," under Mass. R. Crim. P. 36 (b)

(2) (F), of ninety-two days. No dismissal is required if a defendant acquiesces in the delay; moreover, defense counsel has an obligation to object to delay. *Barry* v. *Commonwealth*, 390 Mass. 285, 296 n.13 (1983). Furthermore, there was no violation of John's constitutional right to a speedy trial since (1) the delay was not excessive (compare *Commonwealth* v. *Beckett*, 373 Mass. 329, 331-332 [1977]); (2) the reasons for the delay are not all attributable to the Commonwealth; (3) the defendant did not object to any of the continuances granted; and (4) the defendant has not demonstrated that any prejudice resulted from the delay (see *id.* at 334) beyond incarceration (see *Commonwealth* v. *Stevenson*, 22 Mass. App. Ct. 963, 965 [1986]), and a general claim that "memories fade." See generally *Barker* v. *Wingo*, 407 U.S. 514, 530 (1972).

3. *Edward's motion to suppress.* In challenging the judge's order denying his motion to suppress, Edward contends that his arrest was unlawful, and that he did not knowingly and voluntarily waive his rights under *Miranda* v. *Arizona*, 384 U.S. 436 (1966). We find no error in denying the motion to suppress. Since the police possessed a valid arrest warrant for John A. Dias, they were legally entitled to enter the premises on Rodman Street. See, e.g., *Payton* v. *New York*, 445 U.S. 573, 603 (1980). Police encountered Edward in the hallway of the apartment building, where they properly conducted non-custodial questioning, for voluntary identification. See *Commonwealth* v. *Merritt*, 14 Mass. App. Ct. 601, 604 (1982). After learning that there was an outstanding default warrant for Edward, police then lawfully arrested him.

Similarly, the record clearly supports the finding that Edward was promptly and properly advised of his rights before (and during) questioning by police. We accord substantial deference to the motion judge's findings which are supported by the evidence. See *Commonwealth* v. *Gil*, 393 Mass. 204, 211-212 (1984). After hearing on the motion to suppress, the judge found that Edward was not under the influence of drugs or alcohol when he waived his rights, and that Edward fully understood those rights. These findings also are clearly supported by the record. In addition, we conclude that Edward

was necessarily aware of the crimes about which he was being questioned (see and compare *Commonwealth* v. *Medeiros*, 395 Mass. 336, 345 [1985]; *Commonwealth* v. *Amazeen*, 375 Mass. 73, 78 [1978]), that the judge properly found that Edward knowingly (and repeatedly, upon reiteration of the question by police) waived his right to telephone an attorney, and that the police did not engage in any misrepresentation or deceit in informing Edward that John had implicated him in the murder of Rose. See *Commonwealth* v. *Cartagena*, 386 Mass. 285, 288 (1982) ("police may advise a suspect of what they know"). The record supports the judge's conclusion that Edward's confession was made freely, voluntarily, and without coercion, and it was thus proper to deny the motion to suppress.

Accordingly, the judgments of conviction are reversed, the verdicts set aside, and the cases are remanded for separate trials. We affirm the denial of John's motion to dismiss and the denial of Edward's motion to suppress.

*So ordered.*