COMMONWEALTH *vs.* SOMNUK VIRIYAHIRANPAIBOON.

Norfolk. November 6, 1991. - March 16, 1992.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Constitutional Law*, Search and seizure. *Search and Seizure*, Exigent circumstances, Consent, Plain view. *Practice, Criminal*, Discovery, Pretrial conference, Stated ground of objection, Argument by prosecutor. *Evidence*, Scientific test.

Police officers had probable cause and exigent circumstances justifying their warrantless search of a criminal defendant's apartment and the seizure of knives and bloodstained clothing therein; moreover, where their entry was consented to, the officers were justified in seizing these items, which were in plain view. [226-228]

At a murder trial, the defendant was not entitled to have suppressed from evidence a pair of bloodstained pants, which police had seized from his apartment, on the ground that the Commonwealth, when performing scientific tests, had cut bloodstains from the pants in violation of a pretrial conference report, where the record revealed no violation of the report and where, in any event, the defendant presented no evidence that cutting the pants had prejudiced his defense. [228-229]

Denial of a criminal defendant's motion to limit the prosecution from presenting evidence of the results of certain scientific tests presented no substantial risk of a miscarriage of justice. [229-230]

At a murder trial, there was no error in the judge's treatment of alleged defects in the chain of custody of certain blood samples. [230-231]

At a murder trial, the prosecutor properly argued, on the basis of the Commonwealth's expert testimony, that the defendant's expert did not perform certain scientific tests because he knew that the results would be inculpatory; even if the prosecutor's language suggested that the defendant could have conducted further testing after the bloodstain samples were exhausted, the judge's instructions to the jury shielded the defendant from any prejudice requiring reversal. [231-232]

Passages in the prosecutor's closing argument to the jury at a murder trial did not present a prejudicial comment on the consequences of the jury's verdict or an inflammatory appeal so prejudicial as to require reversal. [233-234]

INDICTMENTS found and returned in the Superior Court Department on May 11, 1989.

Pretrial motions to suppress evidence were heard by *Roger J. Donahue*, J., and the cases were tried before him.

*James E. McCall* (*Rosemary Curran Scapicchio* with him) for the defendant.

*Stephanie Martin Glennon*, Assistant District Attorney, for the Commonwealth.

LYNCH, J. Somnuk Viriyahiranpaiboon was convicted of murder in the first degree, armed assault with intent to murder, and assault and battery by means of a dangerous weapon. He appeals from his convictions, alleging errors of law and in addition, seeking relief pursuant to G. L. c. 278, § 33E (1990 ed.), on our review of his murder conviction. Since we find no error and see no reason to grant relief under § 33E, we affirm the judgments.

The jury could have found the following facts. On the night of April 23, 1989, at approximately 11 P.M., the male victim was waiting in his automobile for his wife (female victim) outside the restaurant where they worked. He saw someone on the stairs by the restaurant's basement-level entrance, wearing a wig and sunglasses, who ran very quickly past the automobile toward the female victim as she left the restaurant's back door. As the person ran past the automobile, the male victim called out in Thai, "Somnuk, Somnuk, why [are] you here? Why [are] you here?"[1] The assailant stabbed the female victim four times, twice in the chest and twice in the abdomen. The female victim later died from her wounds.[2] When the male victim tried to help her, he was also stabbed. The male victim ran into the restaurant seeking help, followed by the female victim. The male victim identified the defendant as his assailant.

---

[1] The male victim and the defendant were chefs at the restaurant and had worked together for over a year. The defendant had not worked at the restaurant that day.

[2] The female victim was five months pregnant at the time of the stabbing. The defendant was not charged with killing the fetus.

The Brookline police and an ambulance arrived within minutes of the attack. An employee of the restaurant tried twice to telephone the defendant's home, but no one answered.

The male victim told the police at the scene that "Somnuk" had stabbed him, and an employee of the restaurant told the police that the defendant lived in Cambridge.

A police officer reported that, while responding to the call about the stabbings, he had seen "a newer black Ford" automobile, with what he believed to be Massachusetts registration number 215PRG, operated by an Asian male of thin build and black hair, stopped at a turnaround about one and one-half blocks from the restaurant. It was later learned that the defendant's automobile was a black Mercury automobile, with the registration number 215RPG.

Officers from Brookline and Cambridge went to the defendant's apartment. The defendant invited them inside. Once inside, an officer observed two knives in the kitchen and a pair of pants with stains on them in the living room. The pants and knives were seized by the police and the stains on the pants proved to be bloodstains.

After the defendant showed the police where his automobile was parked, he was placed under arrest.

1. *Warrantless seizure.* The defendant argues that the warrantless seizure of the knives and pants violated State and Federal constitutional guarantees and that the motion judge, who was also the trial judge, erred in denying his motion to suppress.

Warrantless searches and seizures are prohibited by the Fourth Amendment to the United States Constitution and by art. 14 of the Declaration of Rights of the Massachusetts Constitution. "When police enter a dwelling for the purpose of a search or an arrest, ordinarily they must have a warrant. If they do not have a warrant, two conditions must be met for the entry to be valid: They must have probable cause to believe that the defendant committed the crime and there must exist exigent circumstances." (Footnote omitted.) *Commonwealth v. Pietrass*, 392 Mass. 892, 897 (1984). In this

case, the police had enough evidence to conclude that it was "more probable than not" that the defendant was the assailant (male victim had identified defendant as his assailant; a description of defendant and his automobile as provided by restaurant employee at the scene of the stabbings matched description of automobile and driver an officer had seen less than two blocks from restaurant shortly after stabbings). See *Commonwealth* v. *Pietrass, supra.*

"Exigencies which may justify a procedure without warrant are a narrow category and must be established by the Commonwealth which bears the burden of proof" (footnote omitted). *Commonwealth* v. *Young,* 382 Mass. 448, 456 (1981). Some factors which would tend to support a finding of exigency include: "a showing that the crime was one of violence or that the suspect was armed, a clear demonstration of probable cause, strong reason to believe that the suspect was in the dwelling, and a likelihood that the suspect would escape if not apprehended. Additional considerations testing the reasonableness of police conduct are whether the entry is peaceable and whether the entry is in the nighttime. *Dorman* v. *United States,* 435 F.2d 385, 392-393 (D.C. Cir. 1970)." *Commonwealth* v. *Pietrass, supra* at 898-899, quoting *Commonwealth* v. *Forde,* 367 Mass. 798, 807 (1975).

In these circumstances the test for exigency was met. There was a strong showing of probable cause; the crimes were crimes of violence; the police could reasonably expect the assailant to be armed; the police knew the defendant was in the dwelling; and the entry was peaceable. The police had no way of knowing whether the suspect would escape if not apprehended. Although this case comes close to meeting all of the tests, we have "never held that all of these factors must be present to support a finding of exigent circumstances." *Commonwealth* v. *Bradshaw,* 385 Mass. 244, 255 (1982). The Commonwealth sustained its burden of demonstrating exigency.

In addition, since the entry into the apartment was consensual, no showing of exigency to justify that entry is required. *Commonwealth* v. *Beldotti,* 409 Mass. 553, 556 (1991). The

judge found that the officers entered the defendant's apartment with his permission and with his knowledge that they were coming. Since the officers were lawfully on the premises because they were invited into the apartment, the officers were justified in seizing the knives and the bloodstained pants which were in plain view. See *Mincey* v. *Arizona*, 437 U.S. 385, 393 (1978); *Commonwealth* v. *Lewin (No. 1)*, 407 Mass. 617, 621-622 (1990).

2. *Motion to suppress bloodstained pants.* The defendant argues further that the bloodstained pants should have been suppressed because tests were performed on them in violation of a pretrial conference report (pretrial report).

"Agreements reduced to writing in the conference report shall be binding on the parties and shall control the subsequent course of the proceeding." Mass. R. Crim. P. 11 (a) (2) (A), 378 Mass. 862 (1979). In *Commonwealth* v. *Gliniewicz*, 398 Mass. 744, 747 (1986), we stated, "Such agreements reduced to writing may be equivalent to discovery orders" (citations omitted). However, a showing of prejudice to the defendant is necessary to impose sanctions for the violation of such written agreements. *Id.*, citing *Commonwealth* v. *Cundriff*, 382 Mass. 137, 148-151 (1980), cert. denied, 451 U.S. 973 (1981).

No violation of the pretrial report occurred in this case. The pretrial report contained a stipulation that the Commonwealth would allow the defendant to examine and inspect relevant evidence within thirty days of June 1, 1989, the date of the report. On June 16, 1989, a chemist excised bloodstains from the pants for purposes of serological testing and preservation of the stains in the laboratory freezer. The cutting of the pants for this purpose was not contrary to the specific terms of the stipulation or any reasonable implication therein. On June 23, 1989, after determining that further testing of the samples excised would exhaust them, the Commonwealth informed the defendant that he would be entitled to have an expert present during testing. On that date, the defendant for the first time requested an opportunity to examine and to photograph the pants prior to any cutting. The

prosecutor informed the defendant that she thought the pants were already cut, and later confirmed this fact.

The defendant knew the Commonwealth had the blood-stained pants at least as early as the beginning of May.[3] The defendant could have examined the pants intact any time thereafter until June 16. Furthermore, the defendant's expert was present at all testing of the pants conducted after June 23, 1989, and in fact the tests were delayed until August, 1989, to accommodate the defendant's expert. The judge found that the pants and cuttings were made available to the defendant for inspection and examination.

Even if the pretrial report was violated, the defendant must show he was prejudiced. *Commonwealth* v. *Gliniewicz*, *supra* at 747-749. "An analysis of the prejudice to the defendant necessarily involves an inquiry into the exculpatory nature of the evidence." *Commonwealth* v. *Willie*, 400 Mass. 427, 433 (1987). "While the defendant need not prove that the evidence would have been exculpatory, he must establish 'a "reasonable possibility, based on concrete evidence rather than a fertile imagination," that access to the [material] would have produced evidence favorable to his cause.' *Commonwealth* v. *Neal*, 392 Mass. 1, 12 (1984)." *Id.* The defendant has failed to present any evidence that cutting the bloodstains from the pants prejudiced his defense.

3. *Motion in limine.* The defendant argues that the judge erred in denying his motion in limine to limit the prosecution from presenting evidence that bloodstains on the pants were human bloodstains because the defendant (a) had not been provided with the results of a "ring precipitin test" which determined species, in violation of the pretrial report; (b) had not received notice of the test; (c) had no expert present to observe the test; and (d) had not been able to run his own test because an insufficient sample was available for testing.

[3]The Commonwealth and the defendant stipulated by letter dated May 1, 1989, that defense counsel became aware that the Commonwealth had seized bloodstained pants from the defendant's apartment about one hour after the stabbings occurred.

The defendant raised only argument (a) before the judge, who denied his motion without prejudice. The chemist prepared no report on the results of the species test; therefore, the Commonwealth did not violate the pretrial report.[4]

The defendant waived his right to appeal on other grounds because he did not raise them before the judge.[5] See *Commonwealth* v. *Pares-Ramirez*, 400 Mass. 604, 609 (1987). In such circumstances the test is whether there was an error that created a substantial likelihood of a miscarriage of justice. See *Commonwealth* v. *Dias*, 405 Mass. 131, 137 (1989). Since the arguments raised for the first time on appeal all center around a simple nonexhaustive enzyme test that could have been performed by the defendant at least until August, 1989, no such likelihood is present here.

4. *Chain of custody.* The defendant argues that the judge erred in allowing a State chemist to testify concerning tests on the blood samples of the defendant and the victims because the chain of custody of the blood samples had not been established.

Alleged defects in the chain of custody usually go to the weight of the evidence and not its admissibility. *Commonwealth* v. *White*, 353 Mass. 409, 419-420 (1967), cert. denied, 391 U.S. 968 (1968). Furthermore, the defendant did not object to the chemist's testimony on the ground of a failure to establish the chain of custody; nor did he move to strike the testimony. The judge allowed the defendant to ar-

---

[4]The pretrial report contained an agreement that the Commonwealth would allow the defendant to examine and inspect reports of scientific tests.

The State police chemist who testified for the Commonwealth stated that performing a species test was routine before performing exhaustive enzyme testing, and that such enzyme testing would not be performed if the species test (which was nonexhaustive) was negative for human blood. The defendant elicited no testimony to rebut the chemist's testimony. In addition, the judge found that the defendant's expert was a former State police chemist.

[5]The defendant did not renew his objections during the chemist's testimony.

gue vigorously to the jury that the defect in the chain of custody "is a missing link in this case." There was no error.

5. *Prosecutor's closing argument.* The defendant urges us to reverse his convictions because of certain improprieties in the prosecutor's closing argument. He objected to certain remarks but failed to object to others. We discuss first those objections which were presented to the judge and then those objections raised for the first time on appeal. As to the latter, we consider only whether reversal is required to prevent a substantial likelihood of a miscarriage of justice. *Commonwealth* v. *Dias, supra.*

Remarks made during closing arguments are considered in the context of the entire argument, and in light of the judge's instructions to the jury and the evidence at trial. *Commonwealth* v. *Colon-Cruz*, 408 Mass. 533, 553 (1990). *Commonwealth* v. *Yesilciman*, 406 Mass. 736, 746 (1990). *Commonwealth* v. *Lamrini*, 392 Mass. 427, 432 (1984).

a. *The alleged burden shifting language.*[6] A prosecutor is entitled to argue the evidence and fair inferences to be drawn therefrom. *Commonwealth* v. *Paradise*, 405 Mass. 141, 152 (1989). *Lamrini, supra* at 431. See *Commonwealth* v. *Colon-Cruz, supra.* Here, the prosecutor's statement did not shift the burden of proof to the defendant. She was entitled to argue, based on the expert testimony provided by the Commonwealth, that the defendant's expert did not perform certain tests because he knew they would prove to be inculpatory. See *Commonwealth* v. *Cosme*, 410 Mass. 746, 753 (1991). To the extent that the prosecutor suggested the defendant could have conducted further testing after the samples had

---

[6]The prosecutor argued, "Do you recall when [the defense expert] was on the stand yesterday that I asked him if he saw the samples of the stains from all over the pants and he said yes? I asked him if he tested the samples of the stains from all over the pants and he said no. He was testing whatever he wanted. . . . He didn't test those stains on the pants because he didn't want to produce evidence for the Commonwealth. He didn't want tests to show that stains on the pants were human and that they matched the blood of the victims in this case."

The defendant's objection was noted by the judge. The defendant's motion for mistrial was denied, as was his motion for a curative instruction.

been exhausted, there was a clear misstatement. Even if the prosecutor's words were susceptible to such an interpretation, it would still be necessary for the defendant to show that the statement might have a sufficiently prejudicial effect on the jury to merit reversal. *Commonwealth* v. *Francis*, 391 Mass. 369 (1984). There was no such prejudice. Any misstatement that she made does not reach the level of those we have found prejudicial such as a "reference to a defendant's failure to testify, . . . or [a statement of] personal belief in the defendant's guilt, . . . or attempt[s] to use ethnic prejudice to sway the jury" (citations omitted). *Id.* at 373.

In addition, the jury's deliberative processes were further shielded from any possible prejudice by several statements the judge made during the trial, and by his jury instructions. See *Commonwealth* v. *Francis*, *supra* at 373-374. At the jury empanelment, the judge explained that opening and closing statements of counsel were not evidence and that the jury "will base your verdict solely on the evidence produced here and the law which I give you at the very end of the case." The judge again stated to the jury on the penultimate day of the trial and prior to closing arguments that final argument of counsel is not evidence: "[T]he evidence is the testimony of the witnesses and the exhibits that will be with you in your jury room."

In his instructions, the judge told the jury a number of times that finding the facts was solely their province. The judge gave thorough instructions on the defendant's presumed innocence. He gave repeated instructions concerning the Commonwealth's unremitting burden of proof, that such proof must be beyond a reasonable doubt, and that the burden never shifts to the defendant. In light of these instructions, and of the judge's admonition to the jury that the arguments of counsel were not evidence, the prosecutor's comment, even if it be construed as the defendant urges, was not so prejudicial as to require reversal. See *Commonwealth* v. *Maltais*, 387 Mass. 79, 94 (1982).

b. *The alleged comments on evidence ordered suppressed.* The prosecutor properly argued to the jury that they could

infer from admitted testimony[7] that the person observed one and one-half blocks from the scene by the officer was the defendant. See *Commonwealth* v. *Paradise*, 405 Mass. 141, 152 (1989).

c. *The alleged remarks on consequence of jury's decision.* The prosecutor's statement to the jury that "a killer should not go free because somebody can't estimate height and weight down to the last given inch," did not constitute a prejudicial comment on the consequences of the jury's verdict or inflammatory speech.[8] In context, the statement served to rebut the defendant's suggestion that the male victim's identification of the defendant should be discredited because it was not completely accurate. Similarly, the prosecutor's comment on the issue of transferred intent[9] properly responded to the defendant's intimation at trial that the female victim may

---

[7]The prosecutor argued, "[I]t wasn't very much of an alibi because his car and himself were seen in the turnaround a block and a half from the restaurant." Defense counsel objected and the judge instructed the prosecutor to clarify "himself," which she proceeded to do without further objection. "The inference is clear that the person [the officer] saw a block and a half from the [scene of the crime] was this man, [the defendant], in his motor vehicle."

The judge suppressed an out-of-court identification of the defendant by a Brookline police officer on the ground that the one-on-one nature of the identifications posed constitutional problems. The officer was allowed to testify, however, as to his observations of a person fitting the description of the defendant and his automobile on the evening of the murder.

[8]Cf. *Commonwealth* v. *Smith*, 387 Mass. 900, 910-911 (1983) (emotional, inflammatory speech that commented on the consequences of the jury's decision not isolated remarks and with other prosecutorial errors was unacceptable), and *Commonwealth* v. *Belton*, 352 Mass. 263, 270, cert. denied, 389 U.S. 872 (1967) (isolated remark which was emotional appeal to jury, but not objected to, not so prejudicial as to call for a reversal).

[9]The prosecutor stated: "If a person intends to kill one person but kills the second person by mistake, he is just as guilty of murder. And doesn't that make sense logically? If you set out to kill one person but kill the second person, you have still killed somebody and there is still a murder and you are still guilty of murder even though you made a mistake and killed the wrong person. Just because of that, you don't go free for murder."

have been mistaken for someone else, and reflected in no specific way on ·the defendant.[10]

d. *The alleged inflammatory appeal.* The prosecutor did not unfairly prejudice the defendant when she stated that the State laboratory employees "test blood in every criminal case and, unfortunately, there are too many of them these days."[11] The first clause of the sentence is directed toward dispelling the defendant's suggestion that. the chemist and other laboratory personnel had an interest in the case. The remainder of the sentence, although better left unsaid, does not rise to the level of impropriety which would require setting aside of the verdict. See *Commonwealth* v. *Fitzgerald,* 376 Mass. 402, 423-424 (1978), and cases cited.

6. *G. L. c. 278, § 33E, review.* After reviewing the record as to the murder conviction, we conclude that there is no reason to exercise our extraordinary power under G. L. c. 278, § 33E.

*Judgments affirmed.*

---

[10]Neither comment was objected to at trial.

[11]No objection was made to this comment at trial.