COMMONWEALTH vs. ROBERT L. MARCHIONE & another.[1]

Middlesex. March 3, 1981. — July 1, 1981.

Present: HENNESSEY, C.J., BRAUCHER, LIACOS, ABRAMS, & NOLAN, JJ.

Constitutional Law, Search and seizure. Search and seizure, Exigent circumstances.

Where the owner of a commercial building, in the course of looking for the source of an apparent oil leak in the cellar of the building, discovered in a leased portion of the premises several partially open containers smelling of gasoline in close proximity to an electric toaster in which were open folders of unused matches and which was covered by a pile of newspapers, and the owner immediately called the fire department, the firefighters were justified by exigent circumstances in entering the leased premises without a warrant and seizing the containers of gasoline found therein. [8-12]

COMPLAINTS received and sworn to in the First District Court of Eastern Middlesex on November 24, 1975.

On appeal to the Superior Court a pretrial motion to suppress evidence was heard by O'Connor, J.

An application for an interlocutory appeal was allowed by Liacos, J., in the Supreme Judicial Court for the county of Suffolk and was reported by him to the Appeals Court. The Supreme Judicial Court ordered direct review on its own initiative.

Robert L. Rossi, Assistant District Attorney, for the Commonwealth.

Dorothy DeMita Driscoll for the defendants.

HENNESSEY, C.J. The Commonwealth appeals from an order of a Superior Court judge suppressing evidence gathered in a warrantless search of premises leased by the defendants.[2] We conclude that the search was permissible

---

[1] Paul A. Cerce.

[2] The defendants, charged with conspiracy to burn insured property in violation of G. L. c. 274, § 7, and G. L. c. 266, § 10, each made a mo-

under the exigency exception to the constitutional prohibition of warrantless searches and seizures, and we therefore vacate the order.

We summarize the evidence presented at the suppression hearing. In 1975, the defendants were tenants of one unit in a two-unit commercial building on Main Street in Medford. The building consisted of one floor at street level and a cellar, and was divided at both levels by a wall which separated the defendants' two-level unit from the two-level unit reserved to the trustee owner (owner). On November 22, 1975, the owner was informed of a fuel oil smell emanating from the building. The next day he went to the building with his "oil man" and discovered water with oil floating on it on the cellar floor of his unit. He failed to find the source of the water and oil in his unit.

Pursuant to an oral agreement, the owner had retained a key to the defendants' half of the building to be used in an emergency. The owner used the key to gain access to the defendants' unit at the street level. After entering and finding the cellar door padlocked, the owner and his oil man looked through an existing opening in the floor and saw water and oil on the cellar floor.[3] They broke the padlock and opened the door to the cellar, where they found four plastic jug-like containers on a landing immediately inside the cellar door. The owner smelled gasoline in the one container on the landing that he investigated, and saw four more containers spread apart from one another on the cellar

tion to suppress evidence. After hearing, the motions were allowed as to containers seized without a warrant, the contents of those containers, and analysis of the contents. The Commonwealth applied to this court for interlocutory review of the judge's order. G. L. c. 278, § 28E. A single justice of this court remanded the case for further findings by the Superior Court judge and stayed the request for interlocutory appeal. After the judge made further findings, the application for interlocutory appeal was allowed. The case was forwarded to the Appeals Court and later transferred to this court on our own motion.

[3] After inspecting the cellar, the owner and his oil man found that the oil was leaking from a loose fitting in the oil line to the oil burner which was situated in the defendants' cellar.

floor.   The cover on each was ajar, and the owner again smelled gasoline when he inspected one of the containers on the cellar floor.[4]  In close proximity to one of the containers on the floor was an electric toaster in which there were numerous open folders of unused matches.  The operating mechanism of the toaster was switched to "on," and the toaster was covered by a pile of newspapers.  The toaster cord ran upward through a hole in the street floor, and the plug on the end of the cord was partially inserted into a wall receptacle at the street floor level.

Upon making these observations the owner telephoned the fire department, which promptly sent firefighters to the premises.  Shortly after viewing the scene in the cellar, one of the firefighters telephoned the police.  Several police officers came, and, under the joint supervision of the fire and police departments, the fire department removed the containers to the fire station.[5]  No warrant was obtained.

It is elementary that when a search is conducted without a warrant, the burden is on the Commonwealth to show that the search falls within the class of permissible exceptions justifying the warrantless search.  *Commonwealth* v. *Saia*, 372 Mass. 53, 56 (1977).  *Commonwealth* v. *Antobenedetto*, 366 Mass. 51, 57 (1974).  One of the exceptions to the warrant requirement of the Fourth Amendment to the United States Constitution is where exigent circumstances make it impracticable for authorities to obtain a warrant while the hazardous situation continues to exist.  See, e.g., *Commonwealth* v. *Young*, 382 Mass. 448, 456 (1981); *Commonwealth* v. *Franklin*, 376 Mass. 885, 898-900 (1978); *Commonwealth* v. *Forde*, 367 Mass. 798, 800-803 (1975).  The legal issues presented in this case, as in most cases where exigency is claimed to justify a warrantless search, reduce to two questions: (1) whether the authorities had reasonable

---

[4] Subsequent chemical analysis revealed that the liquid in the eight five-gallon containers was gasoline.

[5] Unlike *Michigan* v. *Tyler*, 436 U.S. 499, 502-504 (1978), the role of the police in the case at bar was inconsequential.

ground to believe that an exigency existed, and (2) whether the actions of the firefighters were reasonable under the circumstances. See *Commonwealth* v. *Young, supra.* "[T]o qualify as an emergency exception, there must reasonably appear to exist an exigency in the course of which a discovery related to the purpose of the entry is made. The exigent circumstances legitimate the presence, and the relevance of the discovery to the justification for the entry sanctions the seizure." Mascolo, The Emergency Doctrine Exception to the Warrant Requirement under the Fourth Amendment, 22 Buffalo L. Rev. 419, 427 (1973). See *Michigan* v. *Tyler,* 436 U.S. 499, 509 (1978).

The judge below concluded that there were no exigent circumstances sufficient to justify a warrantless search. This finding as to exigent circumstances is a legal conclusion and is therefore open to review by an appellate court, especially since it is of constitutional dimension. *Commonwealth* v. *Accaputo,* 380 Mass. 435, 448 n.18 (1980). We hold that the warrantless entry upon the defendants' premises by the firefighters was justified by exigency, and that the subsequent seizure of the challenged evidence was legitimized by the "plain view" doctrine.

The circumstances which occasioned the owner's call to the fire department — the combination of the cellar floor being covered with a volatile liquid and forty gallons of an explosive liquid being stored in partially open containers in proximity to the homemade incendiary device and the oil burner[6] — quite clearly presented an emergency situation requiring immediate action for the protection of life and property. See Model Code of Pre-arraignment Procedure

---

[6] No evidence was presented concerning whether the oil burner was operating or operational, nor whether the electricity in the unit was on. However, this is not fatal. "[W]hether an exigency existed, and whether the response of the police was reasonable and therefore lawful, are matters to be evaluated in relation to the scene as it could appear to the officers at the time, not as it may seem to a scholar after the event with the benefit of leisured retrospective analysis." *Commonwealth* v. *Young,* 382 Mass. 448, 456 (1981).

§ 260.5 (Official Draft 1975) ("An officer who has reasonable cause to believe that premises . . . contain . . . things imminently likely to burn, explode, or otherwise cause death, serious bodily harm, or substantial destruction of property . . . may, without a search warrant, enter and search such premises . . . to the extent reasonably necessary for the prevention of such death, bodily harm, or destruction"). See also *United States* v. *Callabrass,* 607 F.2d 559 (2d Cir. 1979); *United States* v. *Moskow,* 588 F.2d 882 (3d Cir. 1978). Cf. *Michigan* v. *Tyler,* 436 U.S. 499, 509-510 (1978). The defendants make much of the lack of specific evidence concerning the details of the owner's telephone conversation with the fire department, implying that it is doubtful whether the firefighters knew of the emergency situation until they impermissibly crossed the threshold and discovered the exigency. This is too fine a reading of the evidence. An inference may certainly be drawn from the owner's immediate call to the fire department, and from the prompt arrival of the firefighters, that he had told the fire department what every reasonable person in his situation would have told them, namely, that he had just discovered a large quantity of volatile and explosive liquids surrounding an incendiary device on the floor of the adjacent premises. In such circumstances, the fire department is obligated to investigate. G. L. c. 148, § 5. Once lawfully within the premises, the firefighters were entitled to seize the gasoline as evidence of crime within plain view. See *Coolidge* v. *New Hampshire,* 403 U.S. 443, 464-473 (1971).

The order suppressing the containers, their contents, and the testimony concerning the results of chemical analysis of the contents is vacated. An order is to be entered in the Superior Court denying the motions to suppress evidence.

*So ordered.*