## Commonwealth *vs.* Victor Marquez.

Middlesex. April 3, 2001. - June 20, 2001.

Present: Marshall, C.J., Greaney, Spina, Cowin, Sosman, & Cordy, JJ.

*Constitutional Law,* Search and seizure, Arrest, Probable cause, Admissions and confessions. *Search and Seizure,* Arrest, Exigent circumstances, Probable cause. *Arrest. Probable Cause. Practice, Criminal,* Admissions and confessions. *Evidence,* Admissions and confessions.

In circumstances in which a criminal defendant was arrested "inside his apartment" without a warrant, and exigent circumstances were not present, the arrest was unlawful and suppression of items seized in the apartment was required under the "fruit of the poisonous tree" doctrine; however, suppression of evidence obtained by police prior to the defendant's unlawful arrest, namely, the defendant's identification, an observation of one item seized, and the defendant's admission that the item did not belong to him, was not required. [374-377]

This court adopted, under art. 14 of the Massachusetts Declaration of Rights, the principles stated in *New York* v. *Harris,* 495 U.S. 14 (1990), and, after applying the principles, reversed the suppression of certain postarrest incriminating statements made by a criminal defendant at a police station, where the police had probable cause to arrest the defendant and, despite the defendant's unlawful warrantless arrest "inside his apartment," his postarrest statements made at the police station, not at his home, were admissible. [377-379] Cowin, J. dissenting, with whom Marshall, C.J., joined.

Indictments found and returned in the Superior Court Department on March 3, 1999.

A pretrial motion to suppress evidence was heard by *Elizabeth M. Fahey,* J.

An application for an interlocutory appeal was allowed by *Abrams,* J., in the Supreme Judicial Court for the county of Suffolk and the appeal was reported by her to the Appeals Court. The Supreme Judicial Court on its own initiative transferred the matter from the Appeals Court.

*Thomas D. Ralph,* Special Assistant District Attorney (*Marc A. Eichler,* Assistant District Attorney, with him) for the Commonwealth.

*Catherine K. Byrne,* Committee for Public Counsel Services, for the defendant.

*Michael J. Sullivan,* District Attorney & *Robert C. Thompson,* Assistant District Attorney, for the Commonwealth, amicus curiae, submitted a brief.

GREANEY, J. Four men (one armed with a handgun) entered and ransacked an apartment, bound and beat its occupants, and stole various items, including a mountain bike. Days later, one of the men confessed to Lowell police his involvement in the armed home invasion and robbery, implicated the defendant, Victor Marquez, and provided the police with the defendant's address. The police made a warrantless arrest of the defendant after one of the victims positively identified him from a photographic array. The arrest was made after the defendant opened the door of his apartment in response to a knock by a police officer, who recognized the defendant as the person being sought; saw, in plain view inside the defendant's apartment through its open doorway, what appeared to be the stolen mountain bike; and heard the defendant say, "The bike's not mine." After his arrest and booking, the defendant was interviewed by the police and made incriminatory statements.

Citing the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights, a judge in the Superior Court allowed the defendant's motion to suppress the mountain bike and two tires seized by the police from his apartment after his arrest, and "any statements made by the defendant at his home and at the Lowell [p]olice [s]tation." The judge concluded that, because the defendant was arrested "inside his apartment" without a warrant, and exigent circumstances were not present, the arrest was unlawful under *Commonwealth* v. *Forde,* 367 Mass. 798 (1975), and required suppression of the items seized and the defendant's incriminatory statements subsequently made at the police station.

A single justice of this court allowed the Commonwealth's application under Mass. R. Crim. P. 15 (a) (2), as appearing in 422 Mass. 1501 (1996), to pursue an interlocutory appeal from the judge's order, and we transferred the appeal from the Appeals Court on our own motion. We conclude, as did the judge, that the arrest was unlawful and requires suppression of the

mountain bike and the tires seized in the defendant's apartment. We do not suppress the evidence obtained prior to the defendant's arrest, namely, the defendant's identification, the observation of the bike, and the defendant's admission that the bike was not his. Finally, we adopt the principles enunciated in *New York* v. *Harris*, 495 U.S. 14, 19-21 (1990),[1] and, based on an application of those principles, reverse suppression of the defendant's postarrest statements made at the police station.

We now describe, in more detail, the facts as found by the judge (which are supported by the evidence), and the procedural background of the case. On November 6, 1998, Sergeant Joseph Murray of the Lowell police department responded to a reported home invasion of an apartment. Four assailants had tied up, beaten, and robbed the four occupants of the apartment. They stole various items, including a mountain bike, and then left.

A victim had recognized one of the assailants, whom he knew by the name "Chinobi." Sergeant Murray knew a male named Vidalis Medina (Medina) who also was known as "Chinobi." He showed the four victims a photographic array containing a photograph of Medina. At least one of the victims positively identified Medina as one of the men who participated in the home invasion. An arrest warrant issued for Medina's arrest, and on November 11, 1998, Lowell police arrested Medina.

During the evening of November 11, 1998, Sergeant Murray learned of Medina's arrest and interviewed him. Medina confessed to his participation in the home invasion, implicated an individual, with the street name of "Doom," who had also participated in the home invasion, and provided Doom's address, the third floor of 282 Salem Street, to Murray. Murray was aware that the defendant was also known as Doom. Murray had previously seen the defendant on October 25, 1998, when he had been arrested on an unrelated offense and had told police that he resided at 282 Salem Street.

Murray compiled a photographic array containing the

---

[1] In *New York* v. *Harris*, 495 U.S. 14, 21 (1990), the United States Supreme Court held that, "where the police have probable cause to arrest a suspect, the exclusionary rule [of the Fourth Amendment] does not bar [the admission] of a statement made by the defendant outside of his home, even though the statement is taken after an arrest made in the home in violation of [his rights]."

defendant's photograph from his October 25, 1998, booking. He showed the array to one of the victims, who positively identified the defendant as one of the men who had participated in the home invasion and robbery.

That same evening, November 11, 1998, at approximately 11:45 P.M., Murray, accompanied by two detectives (all in plain clothes) went into the apartment building at 282 Salem Street.[2] From the common hallway, Murray knocked on the door of a third-floor apartment, and the defendant opened the door and remained standing inside his apartment. Although he recognized the defendant, Murray asked, "Are you Victor Marquez?" The defendant answered, "Yes." Behind the defendant, Murray observed in the apartment a mountain bike, tipped upside down without its tires. Murray said to one of the detectives, "There's the . . . mountain bike." The defendant stated, "The bike's not mine." Murray then told the defendant that he was being placed under arrest for the home invasion and robbery. The arrest took place inside the apartment, after which the police seized the mountain bike and its two tires. The defendant was brought to the police station where, after booking, he was interrogated by the police and made incriminatory statements.

A grand jury returned indictments charging armed robbery, armed assault within a dwelling, home invasion, and assault and battery by means of a dangerous weapon. Prior to trial, the defendant filed two motions to suppress; the first sought to suppress all evidence seized, and all statements obtained, as a result of his warrantless arrest, and the second motion sought to suppress postarrest statements he made to police during his interrogation.[3] After an evidentiary hearing, the judge entered an order only with respect to the first motion. She concluded, based on Federal and State constitutional law, that there were no exigent circumstances and that the police had made an unlawful warrantless arrest of the defendant while he was inside his apartment. To remedy the constitutional violation, the judge

---

[2]Two uniformed police officers waited outside the apartment building in a patrol car.

[3]In this motion, the defendant argued that the Commonwealth failed to sustain its burden of proving beyond a reasonable doubt that the waiver of his Miranda rights was knowing and voluntary and that his postarrest statements were made voluntarily.

ordered the suppression of the mountain bike and tires (and the officer's observations of these items), as well as any statements made by the defendant at his home. She also ordered that the defendant's later statements at the police station be suppressed because they constituted "the fruit of an unlawful arrest," and the Commonwealth had failed to "demonstrate that the connection between the improper conduct and the statements had become . . . so attenuated as to dissipate the taint."[4] *Commonwealth* v. *Fredette*, 396 Mass. 455, 460 (1985). Noting that this court has not had occasion to decide whether to adopt the holding articulated in *New York* v. *Harris, supra* (see note 1, *supra*) the judge declined to admit the defendant's postarrest statements.

1. We agree with the judge that the police made an unlawful warrantless arrest. "The right of police officers to enter into a home, for whatever purpose, represents a serious governmental intrusion into one's privacy. It was just this sort of intrusion that the Fourth Amendment [and art. 14 were] designed to circumscribe by the general requirement of a judicial determination of probable cause." *Commonwealth* v. *Forde*, 367 Mass. 798, 805 (1975). Significantly, "the Fourth Amendment [and art. 14 have] drawn a firm line at the entrance to [a] house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Payton* v. *New York*, 445 U.S. 573, 590 (1980). Thus, Federal and State constitutional law prohibit "a warrantless entry into a dwelling to arrest in the absence of sufficient justification for the failure to obtain a warrant." *Commonwealth* v. *Forde, supra* at 806. See *Payton* v. *New York, supra* at 576; *Commonwealth* v. *Sanna*, 424 Mass. 92, 96 (1997). If the police do not have a warrant to enter a dwelling to execute an arrest, "two conditions must be met for the entry to be valid: [t]hey must have probable cause to believe that the defendant committed the crime and there must exist exigent circumstances." *Commonwealth* v. *Pietrass*, 392 Mass. 892, 897 (1984). In this case, probable cause to arrest the defendant existed. The Commonwealth, however, does not argue

---

[4]The judge's conclusion obviated the need for her to rule on the defendant's second suppression motion that challenged the lawfulness of his postarrest statements on other grounds.

error in the judge's findings of fact and legal conclusions pertaining to the absence of exigent circumstances to justify a warrantless arrest. We therefore accept this determination.

Our review does not end here. The Commonwealth, citing *United States* v. *Santana*, 427 U.S. 38, 42-43 (1976) (*Santana*), maintains that the defendant's arrest was lawful, and no warrant was required, because the police arrested the defendant in a public place and not in a home. We reject this argument. First, the Commonwealth argues (somewhat inconsistently) that the defendant's arrest "was initiated in the public hallway [of the apartment building]," and that "the judge's findings show that the defendant was standing in the threshold of his apartment door" at the time of his arrest. These contentions ignore the motion judge's finding of fact that the police arrested the defendant *inside* his apartment. The record supports this finding. At the hearing on the motion to suppress, Sergeant Murray testified that he arrested the defendant "in the doorway of [the] apartment," while he (the officer) was "[i]n the doorway leading [to the defendant's] apartment." The judge's finding that the police entered the defendant's apartment to arrest him was a permissible inference from the evidence.

Further, the United States Supreme Court's decision in *Santana, supra,* does not aid the Commonwealth. There the Court upheld the warrantless arrest of a defendant who "was in a 'public' place." *Id.* at 42. The defendant, whom one of the officers recognized and had probable cause to arrest, was standing in the doorway of her house; "one step forward would have put her outside, one step backward would have put her in the vestibule of her residence." *Id.* at 40 & n.1, 42. The Court explained its conclusion that the defendant, when arrested, was in a public place by saying: "She was not in an area where she had any expectation of privacy. . . . She was not merely visible to the public but was as exposed to public view, speech, hearing, and touch as if she had been standing completely outside her house." *Id.* at 42. The Court went on to uphold the officers' actual entry in the defendant's home when she fled inside to avoid the police under the doctrine of "hot pursuit." *Id.* at 42-43.

In contrast, in this case, the defendant was not seen by the

police until they knocked on his apartment door and he answered. The defendant had not been musing about his apartment with the door open for everyone in the hallway to see him; he had not, in any way, exposed himself to public view. The police, who were in plain clothes and did not identify themselves as police officers, entered the defendant's apartment and arrested him before he had an opportunity to object or to consent. See *Payton* v. *New York, supra* at 576, 578, 583 (noting that although defendant's son answered door exposing view of defendant, defendant did not have opportunity to object or to consent to entry by police). We reject the Commonwealth's contention that the defendant was in a public place at the time of arrest, and conclude that the warrantless arrest of the defendant violated art. 14.[5]

Because the defendant's warrantless arrest was invalid, the judge properly suppressed the police's seizure of the mountain bike and tires under the "fruit of the poisonous tree" doctrine. See *Commonwealth* v. *Ramos*, 430 Mass. 545, 550-551 (2000). Contrary to the judge's conclusions, however, suppression of the statements that the defendant made at his apartment before his unlawful arrest (namely his admission that he was Victor Marquez and his statement that the bike was not his), and Officer Murray's observation of the mountain bike, is not required because those statements and the observation *preceded* the il-

[5]Even if there had been a finding of fact by the judge that the defendant had been "at," or "on," the threshold of his apartment when he answered the door, we would not apply *United States* v. *Santana*, 427 U.S. 38 (1976), to justify the warrantless arrest. The requirement that, in the absence of exigent circumstances, the police need a warrant to arrest someone in his or her home, is designed both to protect the arrestee's privacy by prohibiting an unauthorized entry into a constitutionally protected area, and to avoid possibly violent confrontations between the arrestee and the police, particularly when, as here, the police officers are in plain clothes. Making the analysis turn on precisely where the arrestee is standing when he or she opens the door to the home will cause unnecessary litigation and substitute a measure of uncertainty for a settled black letter rule of constitutional law. Further, the *Santana* rule may lead police to forgo obtaining arrest warrants in the belief that they can make valid doorway arrests, and, if they err in so doing, may cause the suppression of important evidence seized inside the home after the invalid arrest. Arrest warrants can be obtained expeditiously, and, in view of that fact, no persuasive reason has been shown to create an exception to our bright-line rule that, to make a lawful felony arrest in a dwelling, the police need either a warrant or probable cause and exigent circumstances.

legal police conduct. See *Commonwealth* v. *Figueroa*, 412 Mass.
745, 749 & n.6 (1992) (explaining that observation, as opposed
to seizure, of item in plain view does not intrude into area
where defendant has reasonable expectation of privacy).

2. We agree with the Commonwealth that this is an appropri-
ate case to adopt, under art. 14, the principles stated in *New
York* v. *Harris*, 495 U.S. 14 (1990),[6] and, after applying these
principles, to deny suppression of the defendant's incriminating
statements at the police station. In *New York* v. *Harris, supra* at
21, the United States Supreme Court held that "where the police
have probable cause to arrest a suspect, the [Fourth Amend-
ment's] exclusionary rule does not bar [the admission] of a
statement made by the defendant outside of his home, even
though the statement is taken after an arrest made in the home
in violation of [his rights]." The police had probable cause to
arrest the defendant for murder. *Id.* at 15. They unlawfully ar-
rested him in his home without a warrant in violation of the
*Payton* rule that "prohibits the police from making a warrant-
less and nonconsensual entry into a suspect's home in order to
make a routine felony arrest." *Id.* at 16, citing *Payton* v. *New
York, supra*. Following his arrest, the defendant was taken to
the police station, was informed of his Miranda rights, and
signed a written inculpatory statement that he later moved to
suppress on the ground that it was the product of an unlawful
warrantless arrest. *New York* v. *Harris, supra* at 16. The trial
judge denied that portion of the defendant's motion and, follow-
ing trial, he was convicted of murder. *Id.* The New York Court
of Appeals reversed. *Id.*

In concluding that the defendant's statement at the police sta-
tion was admissible, the United States Supreme Court noted
that the purpose of the warrant requirement for an arrest in the
home is "to protect the home, and anything incriminating the
police gather[] from arresting [a defendant] in his home." *Id.* at
20. The Court explained that "[n]othing in the reasoning of
[*Payton* v. *New York, supra*,] suggests that an arrest in a home
without a warrant but with probable cause somehow renders

---

[6]The question, whether we would, in an appropriate case, accept the
principles stated in *New York* v. *Harris, supra* at 21, was last reserved in *Com-
monwealth* v. *Sanna*, 424 Mass. 92, 96 n.8 (1997).

unlawful continued custody of the suspect once he is removed from the house. . . . Because the officers had probable cause to arrest [the defendant] for a crime, [he] was not unlawfully in custody when he was removed to the station house, given *Miranda* warnings, and allowed to talk." *Id.* at 18. Thus, the Court expressed doubts "that the desire to secure a statement from a criminal suspect would motivate the police to violate *Payton*[,] [and] [a]s a result, suppressing a station house statement obtained after a *Payton* violation will have little effect on the officers' actions, one way or another." *Id.* at 21.

In addition, the Court rejected the "attenuation" analysis that courts (and the judge in this case) have applied, reasoning that such an analysis is inappropriate because the defendant's post-arrest statement "was not the product of being in unlawful custody [and] [n]either was it the fruit of having been arrested in the home rather than someplace else." *Id.* at 19. Because "the police had a justification to question [the defendant] prior to his arrest . . . his subsequent statement was not an exploitation of the illegal entry into [his] home." *Id.*

The facts in this case are similar to those in *New York* v. *Harris, supra.* The defendant concedes, as he must, that the police had probable cause to arrest him, and his postarrest statements were made at the police station, not at his home. We adopt the holding in *New York* v. *Harris, supra,* and conclude that, despite the defendant's unlawful warrantless arrest, his postarrest statements at the police station were admissible. We agree with the comments in *New York* v. *Harris,* stated above, that, upholding otherwise valid statements given by defendants at the police station after such an invalid arrest, will not cause the police to ignore the *Payton* rule. The penalty for an unlawful arrest in a defendant's dwelling is the suppression of anything seized at the time of the arrest, either from the defendant or in the dwelling, and any statements made at the time of the arrest. It is at this point, i.e., the time of the arrest, that some of the most incriminatory evidence is commonly obtained. The police are unlikely to risk the loss of the admission of that evidence in the hope that the defendant will confess to the crime later at the police station. Where the later statement was itself the product of illegal seizure of evidence or statements made at the time of

the arrest, the later statement could still be suppressed under a "fruit of the poisonous tree" or "cat out of the bag" analysis. Our adoption of *New York* v. *Harris* does not preclude suppression where there is a connection between unlawfully seized evidence or unlawfully obtained statements and a defendant's later statement. On the facts of this case, there is no such connection. We conclude that the unlawful arrest here tainted only the physical evidence seized in the defendant's home after the arrest.

3. So much of the order allowing suppression of the mountain bike and the tires seized from the defendant's apartment after his warrantless arrest is affirmed. The remainder of the order suppressing the evidence obtained before the defendant's arrest (namely his statements to the police while he stood at the doorway and their observations of the mountain bike inside), and his postarrest statements made at the police station is vacated. The case is remanded to the Superior Court for further proceedings, including proceedings on the defendant's second motion to suppress on the ground that his statements at the police station were obtained in violation of his Miranda rights and were involuntary.

*So ordered.*

COWIN, J. (dissenting, with whom Marshall, C.J., joins). In *New York* v. *Harris*, 495 U.S. 14, 21 (1990), the Supreme Court of the United States held that "where the police have probable cause to arrest a suspect, the exclusionary rule [of the Fourth Amendment to the United States Constitution] does not bar [the admission] of a statement made by the defendant outside of his home, even though the statement is taken after an [unlawful] arrest made in the home." The facts presented in this case closely resemble those in *New York* v. *Harris, supra.* The question then is whether art. 14 of the Massachusetts Declaration of Rights offers more substantive protection than does the Fourth Amendment in excluding statements obtained outside the home follow-

ing an unlawful arrest made in the home.[1] The court answers no. I would answer yes. Therefore, I respectfully dissent.

There is no question that arresting the defendant in his home without a warrant and in the absence of exigent circumstances violated the Fourth Amendment and art. 14. See *Payton* v. *New York*, 445 U.S. 573, 576 (1980); *Commonwealth* v. *Sanna*, 424 Mass. 92, 96 (1997). In order to deter police from future violations of these constitutional rights, we have held that the remedy is to exclude evidence obtained as fruit of the illegal conduct. See *Commonwealth* v. *Jacobsen*, 419 Mass. 269, 275 (1995); *Commonwealth* v. *Fredette*, 396 Mass. 455, 458-459 (1985); *Commonwealth* v. *Bradshaw*, 385 Mass. 244, 258 (1982). That includes evidence obtained at the time of the illegality as well as "derivative evidence, both tangible and testimonial, that is the product of the primary evidence, or that is otherwise acquired as an indirect result of the unlawful [conduct]." *Murray* v. *United States*, 487 U.S. 533, 536-537 (1988). See *Commonwealth* v. *Pietrass*, 392 Mass. 892, 902 (1984) ("evidence indirectly obtained as a result of illegal police conduct" may be subject to exclusion).

We do not exclude evidence, however, if the causal connection between the illegal conduct and the evidence later obtained "has become so attenuated as to dissipate the taint." *Commonwealth* v. *Fredette, supra* at 459. In determining whether the connection is sufficiently attenuated, we consider several factors, including "(1) Miranda warnings, (2) the temporal proximity of the arrest and the confession, (3) the presence of intervening circumstances, and (4) the purpose and flagrancy of the official misconduct." *Commonwealth* v. *Bradshaw, supra* at 258.

The court today departs from this precedent and, instead of applying an attenuation analysis, adopts a per se rule that, if the police have probable cause to arrest a suspect, but illegally arrest him or her at home, the causal connection is broken once

---

[1] "It is by now firmly established that, in some circumstances, art. 14 affords greater protection against arbitrary government action than do the cognate provisions of the Fourth Amendment." *Commonwealth* v. *Stoute*, 422 Mass. 782, 787 n.10 (1996), quoting *Jenkins* v. *Chief Justice of the Dist. Court Dep't*, 416 Mass. 221, 229 n.16 (1993).

the police take the suspect outside the home. This creates the anomalous result that evidence seized or statements made inside the house at the time of the unlawful arrest will be excluded, but evidence seized or statements made as soon as the suspect crosses over the threshold of the house will not be excluded. Our Constitution was not designed to split hairs that finely. One of the most fundamental rights under art. 14 is the right of an individual to be free from unreasonable governmental intrusion inside his or her home. See *Commonwealth* v. *Eason*, 427 Mass. 595, 599 (1998) ("Constitutional provisions against unreasonable searches and seizures were adopted in large measure as a protection against warrantless intrusions into homes"); *Commonwealth* v. *Panetti*, 406 Mass. 230, 234 & n.5 (1989). The taint that occurs when police illegally intrude on the sanctity of an individual's home does not automatically evaporate simply because the individual is thereafter taken outside the home. The very reason we apply the attenuation factors is to determine when the effects from the illegal conduct have "sufficiently dissipated that deterrence [under the exclusionary rule] is not meaningfully advanced by suppression." *New York* v. *Harris*, *supra* at 28 (Marshall, J., dissenting).

The court supports its decision by reasoning that the statements the defendant made were otherwise "valid" (the police had probable cause to arrest the defendant and therefore he was in lawful custody when he made the statements at the police station), and that admitting such statements "will not cause the police to ignore the *Payton* rule." *Ante* at 378. I find neither argument persuasive. That the statements were otherwise "valid" assumes the conclusion at issue. Any theoretical "validity" is extremely dubious given the fundamental illegality that preceded the statements. Furthermore, it is irrelevant to the analysis whether the police had probable cause to arrest the defendant.[2] The critical question is whether the taint from the unlawful arrest continued to affect the circumstances under which the statements in question were made.

Our Constitution requires an independent evaluation of the

[2]Obviously, if the police lacked probable cause in this case, custody of the defendant would be unlawful, and the statements could be suppressed for that reason.

existence of probable cause. See *Commonwealth* v. *Baldassini*, 357 Mass. 670, 675-676 (1970). If such an evaluation occurs after the arrest rather than before, while resulting statements may be suppressed, the suspect still has been deprived of his liberty in a fundamental manner. The effects of the invasion on the individual suspect's sense of security "extend far beyond the moment the physical occupation of the home ends." *New York* v. *Harris, supra* (Marshall, J., dissenting).

Further, the court's decision may encourage police to violate the law and intrude on individuals' constitutional rights. If police believe there is a benefit to making an immediate arrest in a suspect's home in order to save time, resources, or to secure a confession, for example, then they may prefer to violate the Fourth Amendment and art. 14 and make an arrest inside the home without first obtaining an arrest warrant. The only thing police will lose is evidence seized or statements made at the time of the arrest. Under the court's decision, any evidence seized or statements made after the suspect is removed from the home would be admissible despite the illegal conduct. This evidence may be even more damaging than evidence police might have observed inside the house. The only effective way "to compel respect for the constitutional guaranty" is "by removing the incentive to disregard it." *Brown* v. *Illinois*, 422 U.S. 590, 599-600 (1975), quoting *Elkins* v. *United States*, 364 U.S. 206, 217 (1960).