COMMONWEALTH *vs*. JAMES C. KIRSCHNER
(and seven companion cases[1]).

No. 05-P-1778.

Essex. September 22, 2006. - December 20, 2006.

Present: PERRETTA, McHUGH, & COHEN, JJ.

*Constitutional Law,* Search and seizure. *Search and Seizure,* Emergency,
   Exigent circumstances, Fruits of illegal search, Home of third person,
   Expectation of privacy.

A District Court judge erred in denying the criminal defendant's motion to
   suppress marijuana found in the defendant's back yard and evidence of the
   production of counterfeit driver's licenses found in the defendant's
   residence, where the situation that the police officers faced — responding
   to a call of fireworks exploding at the defendant's residence — did not rise
   to the level of an emergency [840-842], and where the officers were not
   justified under the exigent circumstances doctrine in entering the back yard
   to look for the persons who had set off the fireworks, in that the officers
   had probable cause to believe only that a misdemeanor had been commit-
   ted [842-844].
Criminal codefendants had no standing to contest the seizure of documents
   and other evidence of the production of counterfeit driver's licenses found
   in the defendant's residence, where the codefendants had no expectation of
   privacy in the defendant's residence, nor were they charged in a posses-
   sory offense such that they would be relieved of the burden of showing an
   expectation of privacy. [844-845]


COMPLAINTS received and sworn to in the Ipswich Division of
the District Court Department, one on July 8, 2004; three on
September 14, 2004; three on September 22, 2004; and one on
October 20, 2004, respectively.

Pretrial motions to suppress evidence were heard by *Allen G.
Swan*, J.

An application for leave to prosecute an interlocutory appeal
was allowed by *Judith A. Cowin*, J., in the Supreme Judicial

---

[1]Two against James C. Kirschner, and one each against Robert B. Bencal,
Meghan E. Lucy, Lauren R. Kroesser, Steven H. MacGregor, and Marc Smith.

Court for the county of Suffolk, and the case was reported by her to the Appeals Court.

*Dana Alan Curhan* (*Brad P. Bennion* with him) for the defendants.

*Catherine L. Semel*, Assistant District Attorney, for the Commonwealth.

Cohen, J. In the early morning hours of July 4, 2004, three police officers arrived at the home of the defendant James C. Kirschner, in response to a neighbor's complaint that fireworks were being detonated at the premises. During warrantless searches of both the back yard and the interior of the Kirschner residence, the officers found marijuana and evidence of the production of counterfeit driver's licenses. As a result, the officers applied for and obtained a search warrant, which led to the discovery of what appeared to be applications for counterfeit driver's licenses signed by the defendants Robert B. Bencal, Meghan E. Lucy, Lauren R. Kroesser, Steven H. MacGregor, and Marc Smith (codefendants).

Kirschner and the codefendants were charged with making, procuring, or assisting another to make a counterfeit driver's license (G. L. c. 90, § 24B), and with conspiracy to make or procure a counterfeit driver's license (G. L. c. 274, § 7). Kirschner also was charged with possession of marijuana (G. L. c. 94C, § 34) and procuring alcohol for a minor (G. L. c. 138, § 34). After a judge in the District Court denied the defendants' motions to suppress the evidence found by the police, the defendants were given leave to take this interlocutory appeal.

We conclude that the officers were not justified in entering Kirschner's back yard or the interior of his house. Thus, as to Kirschner, we reverse the denial of his motion to suppress. As to the codefendants, we affirm, concluding, as did the judge, that because they had no reasonable expectation of privacy in the area searched and were not charged as codefendants with Kirschner in a possessory offense, they were not entitled to challenge the officers' actions.

1. *Facts.* We take the facts from the judge's findings, supplemented by uncontradicted testimony of the officers, whom the judge explicitly credited. See *Commonwealth* v. *Alvarado*,

423 Mass. 266, 268 n.2 (1996); *Commonwealth* v. *Watson*, 430 Mass. 725, 726 n.5 (2000).

On July 4, 2004, at approximately 3:00 A.M., Hamilton police Officers Stephen Walsh and Michael Wetson were dispatched to 19 Boardman Lane, to respond to a neighbor's complaint that fireworks were being set off at that address. When the officers arrived, the house — a large residence, set back and surrounded by woods — was dark and still, except that part of the driveway was illuminated by the light of the open garage, where many empty alcohol containers were visible.

As Walsh drove up the driveway, he saw Kirschner jump behind a tree, but when Walsh stepped out of his vehicle, Kirschner came out and spoke with him. In response to Walsh's inquiries, Kirschner stated that "unwanted guests" had been setting off fireworks, but that these individuals had disappeared, after initially refusing a request that they leave. Kirschner explained that the reason he was outside was to scare them off. He also stated that he knew one of the "unwanted guests" and identified the street where that person lived.

Walsh then asked Kirschner to provide identification. With the officers' permission, Kirschner entered the house to retrieve it, but declined to permit the officers to accompany him. Walsh and Wetson waited outside for about five minutes, during which time they requested the assistance of Wenham police Officer William Foley,[2] who arrived shortly thereafter. Wetson checked the registration of the nine cars parked in the driveway and found that all of them were registered to individuals over the age of twenty-one.

When Kirschner returned, he presented his driver's license, which indicated that his age was twenty-one. He identified himself as a resident of the house and the son of the homeowner, who was in Maine for the weekend. Kirschner told the officers that there were six or seven invited guests inside the house, whom he declined to name, but who did not include the now departed "unwanted guests."

Walsh decided that they should check the perimeter of the house to see if the "unwanted guests" were still around. Without

---

[2]Foley was acting under a mutual aid agreement. See G. L. c. 40, § 8G.

objection from Kirschner, Walsh circled the house to the right, and Foley went around to the left. Because he thought that Kirschner's behavior had been "unusual," Wetson kept Kirschner outside with him "for the safety of the officers."

Using a flashlight, Foley walked to the rear of the house, calling out "Hamilton police." There was no response and no noise from inside or outside the house. From a distance of five yards away, Foley saw a glass-topped table on an outside deck. On the table were beer bottles, a "roach," and a small quantity of green leaves, stems, and seeds, which Foley judged to be marijuana. Foley also looked through an open door leading from the deck to the kitchen and observed a very large amount of liquor and beer. The officers then returned to the front of the house and questioned Kirschner, eventually arresting him for possession of marijuana.

After placing Kirschner under arrest, the officers decided that since Kirschner would be taken away, his guests should be located and removed from the premises. The officers' objectives were to secure what appeared to be an expensive home and to check on the well-being of the occupants in light of the large number of alcohol containers and the marijuana remains. The officers then entered the house — Walsh and Foley going through the door on the deck, and Wetson going through the garage. The officers knocked on the doors of rooms and called out, "Hamilton police." No one answered, but eventually, the police found seven individuals, all of whom were sleeping. They also found and seized additional evidence of marijuana use in the vicinity of two of the guests. The officers roused all of the guests and gathered them in the living room. All but one were twenty-one or older.

The police remained in Kirschner's home for at least one hour and forty-five minutes after assembling the guests in the living room. Each guest was brought into a bathroom to be patted down and questioned, and all of them were checked for outstanding warrants. A fourth police officer arrived on the scene and administered alcohol breath testing. Of the seven guests, two were arrested for possession of marijuana, and two

were placed in protective custody. The remaining three were determined not to be impaired and were made to leave.[3]

While the guests were being questioned, Wetson went from room to room, looking for additional people. Eventually, he made his way into Kirschner's bedroom where, in a desk drawer that had been left open, he saw two driver's licenses. Wetson picked up the licenses and examined them, taking them with him when he left the room. After determining that the licenses did not match any of the guests, Wetson "called in" the names on the licenses. He learned that one name was not in the system, and the other was two years younger than the license indicated.

Once the occupants were removed, Walsh, on the basis of the officers' discoveries, applied for and was granted a warrant to search the Kirschner residence for drugs, drug paraphernalia, and equipment and materials for making false identifications. Walsh and other officers executed the warrant and seized various items, including documents alleged by the Commonwealth to be applications for counterfeit licenses bearing the signatures of the codefendants.

2. *Kirschner.* In reviewing the disposition of a motion to suppress, "we accept the motion judge's subsidiary findings of fact absent clear error," *Commonwealth* v. *Sinforoso*, 434 Mass. 320, 321 (2001), quoting from *Commonwealth* v. *Sanna*, 424 Mass. 92, 97 (1997), but independently review the application of constitutional principles to the facts found. *Commonwealth* v. *James*, 427 Mass. 312, 314 (1998). We are mindful that "[t]he right of police officers to enter into a home, for whatever purpose, represents a serious governmental intrusion into one's privacy." *Commonwealth* v. *Molina*, 439 Mass. 206, 209 (2003), quoting from *Commonwealth* v. *Marquez*, 434 Mass. 370, 374 (2001). Thus, warrantless entries into a home "are per se unreasonable unless they fall within one of the few narrowly drawn exceptions to the . . . warrant requirements [of the Fourth Amendment to the United States Constitution]." *Commonwealth* v. *Amaral*, 16 Mass. App. Ct. 230, 233 (1983), citing *Katz* v. *United States*, 389 U.S. 347, 357 (1967).

The Commonwealth does not dispute that the back yard and

---

[3]None of the guests is a codefendant in this case.

outside deck, which were shielded by trees and not visible from the street, were within the curtilage of the house and thus "subject to the same protection as the home itself." *Commonwealth* v. *Straw*, 422 Mass. 756, 761 (1996), quoting from *Commonwealth* v. *Straw*, 38 Mass. App. Ct. 738, 746-747 (1995) (Laurence, J., dissenting). We therefore begin by considering whether any of the narrow exceptions to the warrant requirement permitted the police to enter the back yard.

Without reference to any specific exception, the judge concluded that, because the police had responded to a call of fireworks exploding at Kirschner's home and had been told that "unwanted guests" had set them off, "[i]t was reasonable . . . for the officers to follow up on this report by circumnavigating the house to see whether these 'unwanted guests' were still on the property or its environs." The Commonwealth contends that the judge's ruling was properly grounded either in the "emergency" doctrine or in the "exigent circumstances" doctrine. We conclude, however, that neither of these exceptions to the warrant requirement is applicable in the circumstances.[4]

The emergency exception "applies when the purpose of the police entry is not to gather evidence of criminal activity but rather, because of an emergency, to respond to an immediate need for assistance for the protection of life or property. . . . For the exception to apply, the burden of proof is on the Commonwealth to show that the warrantless entry falls within the exception and that there were reasonable grounds for the . . . police to believe (an objective standard) that an emergency existed." *Commonwealth* v. *Snell*, 428 Mass. 766, 774-775 (1999), quoting from *Commonwealth* v. *Bates*, 28 Mass. App. Ct. 217, 219-220 (1990). The injury sought to be avoided must be immediate and serious, and the mere existence of a

---

[4]The Commonwealth also argues that Kirschner implicitly consented to the officers' entry into the back yard because, in contrast to his refusal to allow them to accompany him into the house when he went to get his identification, he was silent when the officers decided to enter the back yard. We reject this argument, not only because the judge does not appear to have accepted it (he made no explicit findings as to consent), but also because the subsidiary facts found, even when viewed together with the officers' testimony, do not suffice to establish unambiguous, actual consent and voluntariness. See *Commonwealth* v. *Rogers*, 444 Mass. 234, 239-244 (2005).

potentially harmful circumstance is not sufficient. See *Commonwealth* v. *Allen*, 54 Mass. App. Ct. 719, 721 (2002).

Here, by the time the police arrived, no fireworks were being detonated, and according to Kirschner, the persons responsible were gone. Moreover, even granting that the setting off of fireworks is an activity that carries some degree of danger, the situation faced by the police did not rise to the level of an emergency.

The Commonwealth argues that its position is supported by *Commonwealth* v. *Marchione*, 384 Mass. 8 (1981); however, that case is readily distinguishable. In *Marchione*, warrantless entry into a building was deemed justified under the emergency doctrine where the cellar floor was covered with a volatile liquid, and forty gallons of an explosive liquid were being stored in partially open containers in proximity to a homemade incendiary device and an oil burner. Thus, the state of affairs encountered by the police in that case "quite clearly presented an emergency situation requiring immediate action for the protection of life and property." *Id.* at 11.

By comparison, any danger to person or property that may have been created by the detonation of fireworks in Kirschner's yard was of far less magnitude, and by the time the police arrived, the danger, such as it was, no longer was operative. Furthermore, even if the officers reasonably believed that the persons responsible might still be on the premises or in the adjacent woods, the possibility that they would resume their activity after having been chased away was too speculative and remote to justify the intrusion.

In any event, as the officers explained and the judge found, the police entered the back yard "to see if those responsible were still around." Thus, their actions were of an investigatory character and are more appropriately analyzed under the "exigent circumstances" exception to the warrant requirement, rather than the emergency doctrine.

A warrantless search for investigatory purposes is justified when "[p]robable cause and exigent circumstances . . . coalesce." Grasso & McEvoy, Suppression Matters Under Massachusetts Law § 14-(1)(a), at 14-1 (2004). See *Commonwealth* v. *DeJesus*, 439 Mass. 616, 619 (2003). However, more than a

minor crime must be involved to justify the warrantless intrusion into a private residence. See *Commonwealth* v. *DiGeronimo*, 38 Mass. App. Ct. 714, 728-729 (1995) (no justification for police entry into private residence of suspected drunk driver who had recently caused accident); *Commonwealth* v. *Kiser*, 48 Mass. App. Ct. 647, 651 (2000) (no justification for police entry into apartment in response to complaint that loud music was being played).

In this case, the officers had probable cause to believe only that a misdemeanor had been committed. See G. L. c. 148, § 39.[5] For that reason, if no other, we conclude that the police entry into the back yard to look for the persons who had set off the fireworks was not justified under the exigent circumstances doctrine.

It follows that, because the officers were not lawfully in the back yard, the marijuana seized from the deck must be suppressed. In addition, as to Kirschner, the evidence later discovered by the police inside the house must be suppressed as "fruit of the poisonous tree." See *Wong Sun* v. *United States*, 371 U.S. 471, 488 (1963); *Commonwealth* v. *Pietrass*, 392 Mass. 892, 900-901 (1984).[6]

We observe, however, that even if the officers' entry into the house is analyzed independently, there was no justification for it. The judge concluded that the officers were entitled to enter the house under the emergency exception[7] to the warrant requirement, reasoning that it would have been irresponsible to

---

[5]Pursuant to this section, the possession, control, use, or explosion of fireworks is prohibited and punishable by a fine of not less than ten dollars nor more than one hundred dollars.

[6]The Commonwealth also argues for the first time on appeal that the police had probable cause to believe that additional evidence of drug activity would be found within the house, and that the possible destruction of such evidence created an exigency permitting the warrantless entry. See *Commonwealth* v. *DeJesus, supra* at 619-620. Because the marijuana on the deck was illegally observed and seized, it provided no legitimate basis for entry into the house. In any event, we see no good reason to consider this new argument on appeal. See *Commonwealth* v. *Bettencourt*, 447 Mass. 631, 633-634 (2006).

[7]The judge also characterized the entry as an exercise of law enforcement's "community caretaking" function, citing to cases in which police officers have been permitted to check on the well-being of parked motorists. See, e.g., *Commonwealth* v. *Leonard*, 422 Mass. 504, 508-509, cert. denied, 519 U.S. 877 (1996); *Commonwealth* v. *Evans*, 436 Mass. 369, 372-373 (2002). This

leave the house without clearing it of its occupants and securing it, and that the presence of illegal drugs and evidence of heavy drinking raised the possibility that one or more of the occupants was in medical distress. We think, however, that where Kirschner had informed the police that everyone inside the house was an invited guest, the interior of the house was entirely dark and quiet, and there was no indication that anyone was in acute medical distress, the police had no reasonable basis to believe that there was imminent and serious danger to persons or property requiring immediate action.[8] See *Commonwealth* v. *Allen*, 54 Mass. App. Ct. at 721.

3. *Codefendants.* We agree with the judge that the codefendants may not contest the seizure of documents and other materials found in Kirschner's home. "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Commonwealth* v. *Montes*, 49 Mass. App. Ct. 789, 793-794 (2000), quoting from *Rakas* v. *Illinois*, 439 U.S. 128, 133-134 (1978). "The touchstone of rights under the Fourth Amendment to the United States Constitution, like those under art. 14 of the Massachusetts Declaration of Rights, is a 'reasonable expectation of privacy.' " *Commonwealth* v. *Morrison*, 429 Mass. 511, 513 (1999), quoting from *Katz* v. *United States*, 389 U.S. 347, 360 (1967) (overnight guest may have reasonable expectation of privacy in host's home).

The codefendants were not among Kirschner's overnight guests, and they do not assert any expectation of privacy in the dwelling. Nor are they charged as codefendants with Kirschner

line of cases is not apt, however. Absent a true emergency — involving imminent, serious danger — there is no justification for the warrantless entry into a residence to check on the persons inside. See *Commonwealth* v. *DiGeronimo*, 38 Mass. App. Ct. at 724-729; *Commonwealth* v. *Allen*, 54 Mass. App. Ct. at 721. See also *Commonwealth* v. *Sondrini*, 48 Mass. App. Ct. 704, 706 n.3 (2000).

[8]Even if some degree of concern about leaving the house and the guests was valid, the officers had other options short of making a warrantless entry. They could have asked Kirschner, an adult resident, whether he wanted their assistance in arranging for his guests to leave; they could have sought to contact Kirschner's father to ascertain what his wishes were; and they could have attempted to speak to the people inside the house by knocking or ringing the doorbell or rousing them by telephone.

in a possessory offense such that they would be relieved of the burden of showing an expectation of privacy. See *Commonwealth* v. *Frazier*, 410 Mass. 235, 241-246 (1991).[9]

4. *Conclusion.* For the foregoing reasons, as to the defendant Kirschner, the order denying the motion to suppress is reversed. As to the defendants Bencal, Lucy, Kroesser, MacGregor, and Smith, the order denying the motion to suppress is affirmed.

*So ordered.*

---

[9]The concept of "target standing," upon which the codefendants rely, is inapplicable. "Target standing," which has been discussed but not adopted in the Commonwealth, see *Commonwealth* v. *Scardamaglia*, 410 Mass. 375, 377-380 (1991), allows a defendant to contest the search of someone else's residence upon a showing that the police deliberately violated the resident's rights in order to obtain evidence against the defendant. That is not the case here. Moreover, even if the codefendants were granted standing, they would not be relieved of showing that they had a reasonable expectation of privacy.