Agnes, Peter W., J.
1. Introduction
The defendant is charged by indictment with Trafficking in Cocaine (28-100 grams) and furnishing a *202 false name to a police officer. The evidence of cocaine was obtained as a result of a warrantless search carried out by the Worcester Police Department on April 16, 2008. The defendant has filed a pretrial motion to suppress. Based on the credible evidence presented at the hearing on the defendant’s motion, I make the following findings of fact and rulings of law.
2. Findings of fact
On April 16, 2008, The Massachusetts Department of Children and Families (DCF) (then known as the Department of Social Services or DSS) requested the assistance of the Worcester Police Department in removing a child from a second-floor apartment (apartment #2) of a three-decker located at 8 Alpine Street based on a report that the child was the victim of abuse or neglect. DCF informed the police that the apartment was believed to be occupied by a person known as Pedro Main. That location is in an area known for the high incidence of drug arrests. It is customary for DCF to call the local police for protection and the maintenance of order when it is required to enter a residence or apartment to exercise its authority to take a child into temporary custody in such circumstances. According to Worcester Police Officer Charles L. Brace, whose testimony I credit, these assignments involve both investigation and protection.
3.
On the day in question, Officer Brace was working with Officer Pulsifer. The DCF staff was advised to wait outside until entry was made by the police. Officer Brace knocked on the front door of apartment #2 but received no response. He then entered the building through a rear door and found himself in a common hallway. Officer Brace saw a man standing on the second-floor landing. The unidentified man looked at Officer Brace and then, despite Officer Brace stating “wait,” entered apartment #2 and slammed the door behind him. Officer Brace knocked on the door but received no response. He heard what appeared to be things being moved around inside the apartment. He knocked on the door again. This time the door was opened. Officer Brace smelled the odor of burnt marijuana and observed a man standing inside the apartment. Officer Brace saw a baby carrier as well with a ciying baby inside it.
4.
Officer Brace asked the unidentified male to identify himself and if there was anyone else in the apartment. The male responded in the affirmative that others were present just as Officer Brace saw the shadow of a person in the background and heard other voices inside the apartment. A person later identified as the defendant Cunningham came forward from a rear bedroom and identified himself as “Samuels.” The other male who had been first observed outside the apartment said his name was “Main.” Officer Brace asked the men for identification. The defendant had car keys, but said he didn’t drive and didn’t live in the apartment. However, when the defendant reached into his pocket he pulled out a driver’s license from Jamaica in a name other than Samuels and what appeared to be a large amount of United States currency. He said he worked in a factory. Neither the defendant nor Mr. Main had any weapons on their persons. The child appeared to be in no immediate danger. The police conducted a sweep of the apartment and found no one else present.
5.
Based on the amount of currency on the defendant’s person and his statements about his employment, Officer Brace decided to call the Vice Squad for assistance. Officer Paul Noone from the Worcester Vice Squad and three other Vice Squad officers responded and arrived on the scene as the DCF personnel were leaving with the child. The child turned out to be the daughter of Mr. Main. There were a total of five police officers in the apartment. Miranda warnings were administered to both the defendant and to Mr. Main. Officer Noone noticed that a mattress on one of the beds was “ajar” and the covers were “in disarray.” The defendant identified himself as Damian Samuels, and his identification bore that name and a date of birth of 12-8-77. Officer Noone noticed the defendant looking back at the bed and became suspicious. One of the other police officers present, Lieutenant O’Connor, said “take a look at that bed; he [the defendant] keeps looking at it.” About twenty minutes had passed since the officers first entered the defendant’s apartment. The police had no knowledge of any prior criminal activity involving either the defendant or Mr. Main. Neither the defendant nor Mr. Main had made any gestures or movements that threatened the safety of the police or that could reasonably be described as suspicious or indicative of criminal activity. Officer Noone entered the bedroom, moved the mattress and discovered what appeared to be a quantity of crack cocaine. The defendant responded by stating “that’s all my stuff; it’s all mine.”
6. Rulings of law
(A) Did the police have justification for a warrantless entry?
The first question that arises is whether members of the Worcester Police Department were authorized to enter the second-floor apartment at 8 Alpine Street in Worcester without a warrant. Clearly, if the police were engaged in the investigation of criminal activity, they would require a search warrant in all but a very limited class of cases involving exigent circumstances. See Commonwealth v. Marchione, 384 Mass. 8 (1984). However, “there are certain interactions between police officers and citizens that do not require judicial justification. Local police officers are charged with ‘community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.’ ” Commonwealth v. Evans, 436 Mass. 369, 372 *203 (2002), quoting Cady v. Dombrowski, 413 U.S. 433, 441 (1973).[1] Following its decision in Cady, supra, the United States Supreme Court noted that the Fourth Amendment does not prohibit the police from making warrantless entries and searches “when they reasonably believe that a person within [a private residence] is in need of immediate need.” Mincey v. Arizona, 437 U.S. 385, 392 (1978). The “emergency exception” has been recognized by numerous federal and state courts including Massachusetts.
7.
The emergency exception requires the Commonwealth to establish, based on an objective test, that the police were not engaged in the investigation of crime, that a genuine emergency existed and that the harm sought to be prevented was immediate and serious and not simply potentially harmful. See Commonwealth v. Lindsey, 72 Mass.App.Ct. 75, 88 (2008) (court holds that police who responded to a 911 call about an elderly neighbor, known to be in poor health, standing outside her house on an evening in late November, trembling and asking for help, were justified in entering her apartment without a warrant after receiving no response when they knocked on the door to check on her well being). Accord, Commonwealth v. Marchione, 384 Mass. 8, 10-12(1984); Commonwealth v. McCarthy, 71 Mass.App.Ct. 591, 593-95 (2008); Commonwealth v. Ringgard, 71 Mass.App.Ct. 197, 200-01 (2008).
8.
One class of cases in which the emergency exception has been invoked to justify the warrantless entry by the police into a residence are those in which the police confront a situation involving the immediate danger of serious injury or death to children. See, e.g., United States v. Martins, 413 F.3d 139 (1st Cir. 2005) (during the investigation of a shooting in which one of the victims was found seated outside of an apartment bleeding from a gunshot wound, the investigating officer’s discovery that two young children were inside the apartment in the midst of a heavy cloud of marijuana smoke created a justification for a warrantless entry for the children’s safety); United States v. Bradley, 321 F.3d 1212 (9th Cir. 2003) (“The possibility of a nine-year-old child in a house in the middle of the night without the supervision of any responsible adult is a situation requiring immediate police assistance”). See also Commonwealth v. Hurd, 29 Mass.App.Ct. 929 (1990) (motor vehicle stopped based on tip from anonymous caller that driver was drunk and that there were three children in the vehicle). Contrast, United States v. McGough, 412 F.3d 1232 (11th Cir. 2005) (following arrest of child’s parent outside the residence, child’s need to get her shoes was not sufficient justification for the police to accompany her into the residence to obtain her shoes).
9.
In the present case, the agents of DCF requested officers of the Worcester Police Department to assist them in removing a child who was reportedly the victim of abuse or neglect. Massachusetts law authorizes DCF to remove children in such circumstances as a protective measure. See G.L.c. 119, §51B(3); 110 C.M.R. §4.29 (effective 7/8/08). Massachusetts law also authorizes the agents of the DCF to seek the assistance of the police in removing a child who is suspected of abuse or neglect. 110 C.M.R. §4.26(2) and (3). Under these circumstances, the Worcester police officers were authorized to make a warrantless entry into the apartment in the exercise of their community care taking functions.[2]
10. Did the police exceed the scope of their authority?
Whether the police act on the basis of probable cause and exigent circumstances or on the basis of their community care-taking duties, the Commonwealth bears a heavy burden to establish that immediate action was required whenever the police enter a private residence without a warrant. Commonwealth v. DiGeronimo, 38 Mass.App.Ct. 714 (1995) (court concluded that police lacked justification for a war-rantless police entry into the private residence of a suspected drunk driver who had recently caused an accident absent evidence that he was injured and in need of medical attention). See also Commonwealth v. Marquez, 434 Mass. 370, 374 (2001).
11.
In the present case, the DCF engaged the assistance of the police to effectuate the removal of a child suspected of being the victim of abuse or neglect. Upon entering the apartment, the officers detected the odor of burnt marijuana. They determined that the child was safe, established the identity of the occupants, and began to investigate their suspicions that criminal activity was ongoing. This investigation included the detention of the occupants, and a call to other officers to join them inside the apartment. The investigation continued after the DCF personnel removed the child from the premises. Ultimately, the police conducted a warrantless search underneath a mattress in one of the bedrooms which led to the discovery of a quantity of cocaine. In Commonwealth v. Garden, 451 Mass. 43 (2008), the Supreme Judicial Court held that “the odor of burnt marijuana coming from the clothes of the passengers in the Honda” which had been stopped for a motor vehicle violation warranted the search of the passenger compartment for the presence of marijuana. The Garden case does not stand for the proposition that the detection of the odor of burnt marijuana as the police enter an apartment supplies probable cause to search the entire apartment for marijuana. In Garden, the court indicated at several points that a critical factor in its reasoning was the confined area of the passenger compartment of an automobile. See id. at 47 n.5; id. at 48 n.6, citing United States v. Staula, 80 F.3d 596, 602 (1st Cir.), cert. denied, 519 U.S. 857 (1996). The present case lacks other features often *204 found in cases in which probable cause is found to exist as a result of the detection of an odor of burnt marijuana such as other suspicious circumstances or behaviors, the presence of drug paraphernalia, etc. Contrast, Commonwealth v. Streeter, 71 Mass.App.Ct. 430, 437 (2008) (“Here, the strong odor of marijuana emanating from the inside of the apartment, the admission by the defendant that he had smoked marijuana, and his nervous, evasive behavior in the hallway provided probable cause to believe that there was marijuana in the apartment”). Thus, notwithstanding the detection of the odor of burnt marijuana, the police lacked probable cause for a search and thus exceeded the lawful scope of their initial justification for entry into the apartment. See Commonwealth v. James, 67 Mass.App.Ct. 836 (2006).[3]
12. Whether the police were justified in conducting a search without a warrant.
Even if the mere detection of the odor of burnt marijuana inside an apartment in circumstances in which the police have a right to be present in the apartment can be said to support a finding of probable cause to believe that marijuana may be found somewhere in the apartment, the police had no right to undertake a search for drugs without a warrant. See Commonwealth v. Sondrini, 48 Mass.App.Ct. 704, 706-07 (2000) (discoveiy of evidence of drug possession while looking inside a second-floor apartment from an outside balcony while undertaking a community caretaking activity in connection with the apartment on the first floor required the police to apply for a warrant before entering the second-floor apartment). In order to justify a warrantless search of the apartment in this case, exigent circumstances, as well as probable cause, must have existed at the time of the search. See Commonwealth v. McAfee, 63 Mass.App.Ct. 467, 470 (2005), citing Commonwealth v. DeJesus, 439 Mass. 616, 619 (2003). When the two Worcester Police officers who made the initial warrant-less entry called for additional officers to pursue what at that point had become a criminal investigation, there were no exigent circumstances that justified an additional warrantless entry. The presence of five police officers in the apartment to investigate suspicions of drug activity was substantially different from the justification of two officers to assist DCF in removing a child. There was no urgency based on a concern that weapons were involved or the risk of the loss or destruction of evidence that required an immediate search of the apartment. Instead, the situation in which the police found themselves called for an interior impoundment. One or more officers could have left to apply for a search warrant while the others remained inside the apartment to detain the occupants and preserve the status quo. See, e.g., Commonwealth v. Blake, 413 Mass. 823, 829-30 (1992). See also Commonwealth v. Cataldo, 69 Mass.App.Ct. 465, 474 (2007). The failure of the police to obtain a search warrant in these circumstances violated the defendant’s rights under both the Fourth Amendment and Article 14 of the Declaration of Rights.
ORDER
This is a case like Commonwealth v. Sondrini, 48 Mass.App.Ct. 704, 707 (2000), in which a warrantless entry by the police into a residence may have been justified at the outset because the police were performing a communily care-taking function, but lost its justification when the police transformed it into the investigation of criminal activity followed by a search that was not authorized by a warrant. For the above reasons, the defendant’s motion to suppress is ALLOWED.

See also Commonwealth v. Snell, 428 Mass. 766, cert, den., 527 U.S. 1010 (1999) (warrantless entry of home to check on well being of victim of domestic violence); Commonwealth v. Murdough, 428 Mass. 760 (1999) (warrantless entry of a motor vehicle parked in a rest area on a very cold night for a well being check of a sleeping motorist).

Despite the conclusion that the initial police entry was lawful, the view expressed by the Worcester Police that war-rantless entries to support the activities of DCF involve both investigative and protective functions is disturbing. It is true that the subjective belief of the police about whether they are acting in an investigative capacity or in a communily care-taking mode is not determinative of the lawfulness of their actions. Instead, an objective test is employed. See Commonwealth v. Murdough, 428 Mass. 760, 764-65 (1999). Nonetheless, the community care-taking doctrine, including the emergency exception that came into play in this case, is premised on the understanding that the police are acting in a manner “totally divorced from the detection, investigation or acquisition of evidence relating to the violation of a criminal statute.” Cady v. Dombrowski, 413 U.S. 433, 441 (1973). Given the sensitivity of a warrantless entry by the police into a residence, and the likelihood that in the future the Worcester police will again be called upon to protect or assist state personnel charged with the protection of children, persons suffering from physical or mental disabilities, and the elderly, consideration should be given to promulgation of a policy or the execution of a memorandum of understanding between the police department and other agencies defining the circumstances in which the police will enter a home without a warrant in the exercise of their community care-taking functions.

In Commonwealth v. James, 67 Mass.App.Ct. 836 (2006), the police responded to a call about fireworks being set off and alcohol use at a private residence. Upon arriving at the location, the police discovered that the illegal activity, if any, appeared to have come to an end. Nonetheless, after checking the identification of the person who greeted them who was over the age of 21, establishing that the vehicles parked on the property were validly registered to persons over the age of 21, and checking the perimeter, an officer walked around the back of the home, and observed what appeared to be evidence of marijuana on a glass-topped table on an outside deck. Id. at 838-39. At this point, the police decided to enter the residence to conduct a well being check of the occupants. One of the individuals was found in possession of a fraudulent license and the police found additional quantities of marijuana. In James, the Appeals Court concluded that the police conduct did not fall within the parameters of the community care-taking function, but was investigatory in nature. Id, at 843-44. Lacking any justification for a warrantless entry into the backyard of the residence, the Court concluded that the police had exceeded their authority and conducted an unlawful search. Id.